BONNIE L. ROSENBALM *v.* MICHAEL D. WINSKI.

[No. 3-973A120. Filed August 14, 1975. Rehearing denied September 15, 1975. Transfer denied March 29, 1976.]

*Richard F. Joyce, Kizer, Neu, Joyce & Rockaway,* of Plymouth, for appellant.

*Lester Murphy, Jr., Murphy, McAtee, Murphy & Costanza,* of counsel, of East Chicago, for appellee.

GARRARD, J.—Rosenbalm brought suit for the wrongful death of her husband who was killed in an intersection collision. At the time, he was driving a firetruck in response to a call to extinguish a grass fire. The firetruck entered an intersection with U.S. Highway 30 against a red light and collided with Winski's automobile. Trial by jury resulted in a verdict for the defendant.

On appeal Rosenbalm alleges error in the admission of certain opinion testimony and in the giving of an instruction regarding possible contributory negligence on the part of the decedent. We affirm.

At trial an Indiana state police officer who investigated the accident testified to his opinion of the speed of the vehicles at the time of collision. The admission of that testimony is attacked upon two grounds.

First, it is charged that a non-eyewitness may not properly

give an opinion as to the pre-impact speed of vehicles involved in a collision.

However, examination of the record discloses that no objection asserting this theory was made at the trial. The record, therefore, presents nothing to review. Furthermore, while some prior Indiana cases support Rosenbalm's proposition, we believe that they fall within the line of authority expressly overruled by our Supreme Court in *DeVaney* v. *State* (1972), 259 Ind. 483, 288 N.E.2d 732.

While the point at issue in *DeVaney* was opinion as to the point of impact, the Court spoke to the *per se* exclusion of this kind of expert opinion testimony and concluded that henceforth it would be admissible when properly presented. In other words, a properly founded expert opinion on speed, point of impact, mechanical failure, etc. is not inadmissible merely on the ground that the opinion seeks to elicit an "ultimate fact" or assertedly invades the province of the jury.[1]

The second point raised by Rosenbalm to exclude the opinion

1. It is worthy of note that retreat from the ancient rule may have been occasioned in no small part by the elusive character of "ultimate facts." As observed by McCormick on Evidence (2d Ed., 1972), at 23, 24:

"This classic formula, based as it is on the assumption that 'fact' and 'opinion' stand in contrast and hence are readily distinguishable, has proven the clumsiest of all the tools furnished the judge for regulating the examination of witnesses. It is clumsy because its basic assumption is an illusion. The words of the witness cannot 'give' or recreate the 'facts,' that is, the objective situations or happenings about which the witness is testifying. Drawings, maps, photographs, even motion pictures, would be only a remote and inaccurate portrayal of those 'facts' and how much more distant approximations of reality are the word pictures of oral or written testimony. There is no conceivable statement however specific, detailed and 'factual,' that is not in some measure the product of inference and reflection as well as observation and memory. The difference between the statement, 'He was driving on the left-hand side of the road' which would be classed as 'fact' under the rule, and 'He was driving carelessly' which would be called 'opinion' is merely a difference between a more concrete and specific form of descriptive statement and a less specific and concrete form. The difference between so-called 'fact,' then, and 'opinion,' is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable line to mark the boundary." (Footnote omitted.)

regarding speed of the firetruck is that it was based upon hearsay. This objection was asserted at trial and is based upon the following which occurred during preliminary questions asked of the witness before his opinion was admitted:

"Q: Officer, you indicated that you had an opinion of the fire truck speed, is that right?

"A: Yes.

"Q: Did you obtain your opinion from questioning other witnesses?

"A: Partially.

"Q: So your opinion would be based upon what they might have told you?

"A: Partially, yes."

It has been said that the general rule excludes a direct opinion by an expert where the opinion is based upon reports that are not in evidence or are inadmissible as substantive evidence under the hearsay rule. See: McCormick on Evidence (2d Ed., 1972), at 34.

Many of the older cases simply denounced this as usurpation of the jury function, since in such instances the expert might be said to have determined the credibility of and weighed the evidence of his informants. However, the modern view rejects this motion at least partially upon the ground that the opinion may still be attacked and the jury may choose to discredit it. See: DeVaney.

On the other hand, it is valid to observe that in such instances the jury is asked to accept as probative evidence the witness' conclusion based upon someone's hearsay assertion of a fact which the jury has no basis for finding to be true. Furthermore, if the opinion is actually dependent upon classic hearsay, the expert may lack the knowledge-qualification required for expert opinions. See: Fischer v. State (1974), 160 Ind. App. 641, 312 N.E.2d 904 (transfer denied).

Despite the generalization, it is well recognized that many admissible expert opinions are based, in part, upon items

which are technically hearsay, such as stopping distance tables. *Ryan* v. *Payne* (Ky., 1969) 446 S.W. 2d 273.

In addition, an expert may give his opinion based upon tests not performed by him but by technicians under his direction. *Indianapolis Union Railway* v. *Walker* (1974), 162 Ind. App. 166, 318 N.E.2d 578.

In eminent domain proceedings, expert opinion on valuation regularly rests upon hearsay determinations of the sale price of other parcels of land.

Thus, it may be that the proper generalization recognizes that an expert opinion is not excludable because it is based in part on hearsay, where the hearsay is of a type normally found reliable and is customarily relied upon by the expert in the practice of his profession or area of expertise. *Smith* v. *State* (1972), 259 Ind. 187, 285 N.E.2d 275, *Cert. denied,* 409 U.S. 1129 (1973) ; *Jenkins* v. *United States* (1962), 113 U.S. App. D.C. 300, 307 F.2d 637; but see: *Briney* v. *Williams* (1968), 143 Ind. App. 691, 242 N.E.2d 132 (transfer denied), where medical opinion by a non-treating physician is inadmissible when based in part upon history related by the patient.[2]

In addition, it would appear that an otherwise validly drawn expert opinion should not be rendered inadmissible merely because somewhere along the way the expert was exposed to an item of hearsay which he may have "considered" in that it appeared to corroborate or not dispute his conclusion. See: *e.g., Trinity Univ. Ins. Co.* v. *Town of Speedway* (1965), 137 Ind. App. 510, 210 N.E.2d 95.

Applying the foregoing to the present case it appears that the officer's opinion was based in part upon undisclosed hearsay reports. It does not appear that the hearsay was of a type regularly found reliable and customarily relied upon, nor does it appear that the

---

2. However, query whether physicians would deem the account reliable when the presupposition is that there will be no treatment.

opinion was founded independently of the hearsay. It was, thus, error to admit it.

However, under the mandate of Indiana Rules of Procedure, Trial Rule 61,[3] we hold that in this case the error was not reversible. The officer's opinion was that the firetruck was being operated at 30 m.p.h. Six eyewitnesses testified to their appraisal of the truck's speed; one said, "under 40, about 35"; the second said, "30 to 35"; the third, "35"; the fourth, "40"; the fifth, "20"; and the sixth, "around 20 to 25." Accordingly, refusal to reverse upon this error does not appear inconsistent with substantial justice.

Rosenbalm next objects to the admission of the police officer's opinion that it was unsafe for the firetruck to proceed into the intersection.

We first consider whether such opinion evidence is within the *DeVaney* rule, for if it is, the assignment is disposed of.

Justice Hunter, writing for a unanimous court in *DeVaney*, considered the traditional proposition that expert opinions on ultimate facts are inadmissible. He stressed the difficulty in defining "ultimate fact" and quoted McCormick with approval in observing that because of the difficulty of definition, application of the rule is ofttimes:

> ". . . unduly restrictive, pregnant with close questions of application and the possibility of misapplication, and often unfairly obstructive to the presentation of a party's case . . ." 259 Ind. at 490, 288 N.E.2d at 736, 737.

In addition, the Court rejected the notion that such opinions usurp the jury function, since the cross-examiner remains free to impeach the opinion and the jury is free to reject it.

---

3. "No error in either the admission or the exclusion of evidence and no error or defect in any ruilng or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

While we are in wholehearted agreement with the *DeVaney* rule, we do not perceive that it implies that all conclusions drawn by expert witnesses and thereby rendered admissible at trial.

Professor McCormick, in discussing opinions on the ultimate issues of a case, points out that in reality the terms "fact" and "opinion" denote merely a difference of degrees of concreteness of description or a difference in nearness or remoteness of inference, rather than mutually exclusive absolutes.[4]

Thus, while criticizing the "ultimate fact exclusion rule", he nevertheless observes:

> "Undoubtedly there is a kind of statement by the witness which amounts to no more than an expression of his general belief as to how the case should be decided or as to the amount of unliquidated damages which should be given. It is believed all courts would exclude such extreme expressions." (Footnote omitted.) McCormick, *supra,* at 26.

Broad form conclusions such as "A is liable"; "A is at fault"; "A is guilty of contributory negligence"; should not be allowed as expert opinions. The reason for the exclusion does not lie in the assertion that they are ultimate facts. Indeed they are not. Even apart from the "fact vs. conclusion" analysis they are inadmissible.

The general rule, long adhered to in Indiana, is that expert opinion is inappropriate on matters within the common knowledge and experience of ordinary men. *The Equitable Accident Insurance Company* v. *Stout et al.* (1893), 135 Ind. 444, 33 N.E. 623; *Brunker* v. *Cummins* (1892), 133 Ind. 443, 32 N.E. 732.

---

4. "There are many degrees of generality of statement. In comparison with the next broader statement, each statement may be said (and is said) to be a statement of fact. Thus, in comparison with the statement 'X was not mentally competent to execute a will' the statement 'X was insane' is a statement of fact. In comparison with the statement 'X was insane' the statement 'X acted peculiarly' is a statement of fact. In comparison with the statement 'X acted peculiarly' the statement 'X had a vacant stare' is a statement of fact. . . ." King & Pillinger, Opinion Evidence in Illinois 10 (1942).

Thus, where the question posed to the expert injects as an element necessary to the answer the issue of whether a party was negligent or exercising reasonable care, the question becomes objectionable because in the eyes of the law ordinary men and women are capable of making that assessment based upon their common knowledge and experience. In such instances the holding in *DeVaney* is not at issue. The question is simply not one upon which an expert should testify.

In the case at bar, defense counsel established the witness' experience in driving through red lights on emergency calls and then posed a hypothetical question to seek an opinion whether it was safe for the firetruck to proceed into the intersection at any speed. The opinion was stated that the driver could have proceeded past the red light after determining that it was safe to do so. The officer was then asked if he assumed the same facts plus a collision, whether in his opinion it had been safe to proceed.

Counsel then raised the objection asserted on appeal. We conclude that the error is again controlled by Trial Rule 61, *supra*. At the point the opinion was stated, it was so nearly superfluous that we cannot say its admission deprived Rosenbalm of substantial justice or prejudiced her substantial rights. The conclusion stated was obvious from the testimony preceding it. There was ample evidence from which the jury might otherwise determine the questions of negligence and contributory negligence and, also, determine the weight to be assigned the officer's opinion. Under such circumstances we hold the error harmless.

The final error assigned relates to an instruction given by the court. At Rosenbalm's request, the court instructed the jury in accord with IC 1971, 9-4-1-25 (Burns Code Ed.), as to the ability of an authorized emergency vehicle to proceed past a red light and that if the jury found that in compliance with the statutory requirements Rosenbalm so entered the intersection, then they might not find him guilty of con-

tributory negligence solely because he entered the intersection against the red light.

Rosenbalm, however, objected to a companion instruction tendered by the defense and given by the court:

"You are instructed that David Rosenbalm as the driver of an emergency vehicle, had no right to proceed against the red light at the time of the accident unless the fire truck which he was driving was making use of visual signals meeting the requirements of law, which requirements of law are set forth by the Indiana Statutes as follows:

§ 47-2216a—'(b) . . . every authorized vehicle shall, in addition to any other equipment and distinctive markings required by this act be equipped with signal lamps mounted as high and as widely spaced laterally as practicable, which shall be capable of displaying the front two (2) alternately flashing red lights located at the same level, and these lights shall have sufficient intensity to be visible at 500 feet in normal sunlight.'

"If you find that the emergency vehicle driven by David Rosenbalm was not so equipped, then you are required, as a matter of law, to find that the driving of said vehicle into the intersection of U.S. 30 against the red light constituted contributory negligence upon the part of David Rosenbalm and if you find that such contributory negligence was a proximate cause of the collision and his death then you must return a verdict for the defendant." (Correction as appears in original.)

The basis for the instruction was evidence that the firetruck had only one red light on the top of the vehicle and that its visibility to those at the scene was cancelled out by the sunlight.

Rosenbalm objects to the instruction's reference to "a" proximate cause rather than "the" proximate cause. However, the form used was correct. *Hedgecock* v. *Orlosky* (1942), 220 Ind. 390, 44 N.E.2d 93.

Similarly, it is asserted that "contributory negligence" imports causation and that it was erroneous to charge "if you find such contributory negligence was a proximate cause * * *." We think the meaning was clear and fairly informed the jury that negligence was not enough. They must also

find proximate causation for the statutory violation (if found) to bar the action. Cf: *Montgomery* v. *Gerteisen* (1964), 135 Ind. App. 633, 195 N.E.2d 868.

The principal contention made is that the instruction erroneously placed upon Rosenbalm the burden of properly equipping his vehicle or, in the alternative, imputed to him the negligence of the fire department.

The argument fails to acknowledge the operational effect of the statute. IC 1971, 9-4-1-25, *supra,* provides that the Uniform Act Regulating Traffic on Highways shall apply to the *drivers* of all governmentally owned vehicles. It then permits the *driver* of an authorized emergency vehicle to proceed past a red light under certain circumstances but specifically qualifies that permission, stating:

"(e) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of law * * *."

Those requirements, as set forth in IC 1971, 9-8-6-20 (Burns Code Ed.), were quoted in the instruction.

Thus, the potentially negligent conduct defined by IC 1971, 9-4-1-25, *supra,* was not the failure to properly equip the vehicle. It was driving the vehicle through the red light without the necessary visual signals, the conduct ascribed to Rosenbalm's decedent.

The fourth objection made was that the instruction required a finding for the defendant if the lighting equipment on the firetruck did not meet the statutory requirements. The supporting argument for this assertion is meager, and we consider any points beyond our discussion to have thus been waived.

The essential answer to the basic assertion is that it is incorrect. The instruction required both that negligence and proximate causation be found before the plaintiff's right to recover was barred.

We will, however, proceed one step further. As stated

in *Clark* v. *Sterrett* (1966), 141 Ind. App. 384, 220 N.E.2d 779 (transfer denied), the legislative purpose in enactment of the emergency vehicle provision was to prohibit endangering life and property by the very privileges being granted for their protection.

Thus, the statute operates upon drivers of emergency vehicles for the protection of others using the public highways. Therefore, Winski, who was driving upon a public highway at the time, may claim the benefit of the statute. *Larkins* v. *Kohlmeyer* (1951), 229 Ind. 391, 98 N.E.2d 896.

No claim has been made that the statute failed to impose a duty with sufficient particularity. Moreover, the instruction's mandate for the necessity of proximate causation and the evidence clearly establishing the issue to be the visibility of the red light would support a conclusion that neither the trial nor the result were rendered unjust by the quotation made of the statute.

We, of course, are aware that violation of a statutory duty does not always constitute negligence as a matter of law. Where the circumstances of the particular case admit to a justification or excuse for the violation, the violation is simply *prima facie* evidence of negligence and may be rebutted. *Larkins* v. *Kohlmeyer, supra.* However, where no evidence of justification or excuse is produced, it is not error to instruct that the violation, if found, constitutes negligence *per se. New York Central Railroad Co.* v. *Glad* (1962), 242 Ind. 450, 179 N.E.2d 571; *Northern Ind. Transit, Inc.* v. *Burk* (1950), 228 Ind. 162, 89 N.E.2d 905.

Here there was no evidence to establish excuse or justification. Nor was there any issue of recklessness on the part of Winski or of last clear chance that might preclude contributory negligence from defeating the action.

Therefore, it was not error for the instruction to postulate that violation of the statutory duty was negligence *per se* or that if violation and proximate causation were found, the action was defeated.

Judgment affirmed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 332 N.E.2d 249.