CITY OF INDIANAPOLIS, Appellant
(Defendant Below),

v.

Edward ROBINSON, Appellee
(Plaintiff Below).

No. 2–680A190.

Court of Appeals of Indiana,
Fourth District.

Nov. 9, 1981.

Rehearing Denied Jan. 7, 1982.

John G. Forbes, Asst. Corp. Counsel, City-County Legal Div., Indianapolis, for appellant.

John F. Townsend, Jr., Townsend, Hovde, Townsend & Montross, Indianapolis, for appellee.

MILLER, Presiding Judge.

The City of Indianapolis (City) appeals a judgment awarding Edward Robinson damages for personal injuries suffered in an automobile accident. Robinson had charged the City with negligence in the maintenance of a city street. During the jury trial, the City attempted to establish Robinson was contributorily negligent in traveling in excess of the speed limit at the time of the accident. The trial court, however, excluded expert testimony on this matter and the City argues such exclusion was contrary to law. Since we agree the trial court committed reversible error in refusing to allow the City's expert witness to answer hypothetical questions regarding the speed of the Robinson vehicle, we reverse and remand for a new trial.

## FACTS

In the early morning hours of August 13, 1967 [1] Robinson was driving his 1958 Jaguar

---

1. Although Robinson's trial commenced January 22, 1980, he filed his complaint on October 31, 1967. The action was dismissed in 1973 but later reinstated and additional time allowed to update discovery. Continuances also contributed to the delay.

west on Raymond Street, a public highway in the City of Indianapolis. Raymond Street ended abruptly at the edge of the Eagle Creek gorge due to the removal of a bridge during a construction project for an expressway. In place of the bridge which previously spanned the gorge, the City erected a guard rail at the end of Raymond Street. Nevertheless, on the night in question, Robinson's vehicle plunged from the edge of Raymond Street across the gorge and into the base of the opposite bank. As a result Robinson suffered various internal and external injuries including five broken ribs, a collapsed lung, and extensive damage to his right knee. In addition to various medical expenses and loss of earnings during his recovery, Robinson sustained a 20 to 25% permanent impairment "of the whole."

Robinson testified he was traveling 25 to 30 miles per hour, just under the 30 miles per hour speed limit, at the time of the accident. During its case in chief, the City called John M. Ulrich, a registered professional engineer, as an expert witness regarding the speed of Robinson's vehicle. After establishing Ulrich's qualifications, the City propounded at least two hypothetical questions designed to elicit Ulrich's opinion on Robinson's speed at the time of the accident. The hypotheticals allegedly incorporated measurements revealed by the testimony of a police officer who investigated the scene of the accident on the morning in question. Robinson's objections to the hypotheticals were sustained by the trial court. The City made offers to prove both with respect to Ulrich's qualifications and his opinion that Robinson was in fact traveling at the rate of 60 miles per hour at the time he struck the guard rail and plunged into the river bank. The trial court again sustained Robinson's objections. The jury ultimately entered a verdict against the City and awarded Robinson $60,000 in damages.

## ISSUES

The City raises the following issues for review:

1) Whether the trial court committed reversible error in not permitting Ulrich to testify in his capacity as an expert witness regarding the speed of Robinson's vehicle at the time of the accident?

2) Whether the jury's damage award was excessive?

## DECISION

The City contends the trial court committed reversible error in excluding the testimony of its expert witness, John M. Ulrich. In determining the propriety of admitting or excluding expert testimony in response to hypothetical questions, we are confronted with several concerns, including the qualifications of the witness and the sufficiency of the hypotheticals. In support of the exclusion Robinson argues the existence of deficiencies in both areas. He additionally argues the trial court had absolute discretion to exclude any expert testimony on the speed of the Robinson vehicle as an invasion of the jury's province, even assuming both Ulrich's qualifications as an expert and the sufficiency of the hypotheticals. We will address each contention in turn.

*Qualifications of Expert Witness*

The City emphasizes Ulrich is a registered professional engineer and a professor of engineering who is experienced in computing the speed of airborne objects. On the other hand, in support of the exclusion of Ulrich's testimony, Robinson first contends Ulrich did not possess the necessary qualifications to render an expert opinion.

We recognize that, generally, the question of an expert's qualifications is for the trial judge's broad discretion and its decision in this regard is reviewable only for an abuse. *Davis v. Schneider*, (1979) Ind.App., 395 N.E.2d 283 (where this Court termed an argument "specious" which alleged a licensed medical doctor was not qualified to render an expert opinion on the aggravation of a patient's injuries). To qualify a witness as an expert two requirements must be met. First, the subject-matter of the expert's opinion must be so dis-

tinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average layperson. *Davis v. Schneider, supra*; M. Seidman, The Law of Evidence in Indiana at 21 (1977); VII J. Wigmore, Evidence § 1923 (1940). Secondly, the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness's opinion or inference will probably aid the trier of fact in the search for truth. *Davis v. Schneider, supra*; Seidman, *supra*; Wigmore, *supra*.

▌ Here, Robinson contends the court's ruling could be sustained on the basis that Ulrich's qualifications to testify on this issue were in several respects insufficient.[2] First he asserts Ulrich's qualifications do not include any particular experience in the reconstruction of automobile accidents. According to the testimony, however, Ulrich obtained a bachelor's degree in mechanical engineering in 1957 and a master's degree in engineering in 1965. He is a registered professional engineer, and a member of the Society of Automotive Engineers and the Indianapolis Scientific and Engineers Foundation. Ulrich is an Associate Professor of Mechanical Engineering and Technology at Indiana University, Purdue University at Indianapolis. Specifically, Ulrich teaches practical courses in the School of Engineering and Technology, including courses on dynamics dealing directly with the computation of velocities, accelerations and distances traveled by airborne objects. Ulrich also teaches a similar course preparing candidates for certification as registered professional engineers in Indiana. According to his testimony, on many occasions Ulrich has computed the speed of various objects based only on the distances traveled and their relative locations.

In his brief Robinson points out that Ulrich had apparently never testified in court as an "automobile accident reconstruction expert." We note the City at some point submitted an offer of proof on Ulrich's qualifications although it does not appear

the trial court restricted Ulrich's testimony based on his qualifications. Ulrich's resume, submitted as part of the offer of proof of his qualifications, indicates Ulrich has advised many law firms on similar matters on many occasions and has in fact testified as an expert witness, although the resume does not indicate the specific subject-matter of such testimony. The offer to prove, however, indicated Ulrich has testified on such matters on more than ten occasions. In any event, we do not believe it is significant if Ulrich had not testified as an "automobile accident reconstruction expert" in a judicial proceeding before the current case. Should we now accept such an objection as sufficient to exclude an expert's testimony, we would in fact never be able to qualify future witnesses as experts. *Niehaus v. State*, (1977) 265 Ind. 655, 359 N.E.2d 513, *cert. denied* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188.

We recently held an expert witness with arguably less expertise but certainly less formal training than that of Ulrich in this particular area was qualified to testify on the cause of an accident. In *State v. Bouras*, (1981) Ind.App., 423 N.E.2d 741, this Court recognized the qualifications of an Indiana State Trooper to render an expert opinion on the cause of an automobile accident. This state trooper had been trained by the State at two law enforcement academies and in various seminars with unspecified curriculum. He also had two years investigative experience involving the determination of the direction and speed of vehicles in traffic accidents. *See also Hergenrother v. State*, (1981) Ind.App., 425 N.E.2d 225; Annot., 29 A.L.R.3d 248 (1970).

On the other hand, Robinson calls our attention to several opinions where an expert witness's testimony in accident reconstruction was held properly excluded. For example in *McClure v. Austin*, (1972) 152 Ind.App. 398, 283 N.E.2d 783, this Court held it was not an abuse of discretion to exclude the expert opinion of a police offi-

---

**2.** At trial, Robinson's objection was non-specific in contending only generally that "the wit-   ness is not qualified to give that opinion...."

cer who had attended "recruit training" at Indiana University and who had "on the job training" at Purdue University in determining the speed of vehicles. The officer was retired at the time of trial and his "on the job training" occurred 30 years before the accident involved in that case. Although the police officer in *McClure* had investigated some 3,000 automobile accidents, the evidence revealed little indication of any particular expertise in determining the speed of vehicles in automobile accidents. This Court therefore held it was not an abuse of discretion to exclude the officer's testimony since reasonable persons might differ as to whether or not the witness was qualified to testify as an expert accident reconstructionist. Robinson also relies on *Shelby National Bank v. Miller*, (1970) 147 Ind.App. 203, 259 N.E.2d 450 where this Court upheld the exclusion of testimony by a qualified accident reconstruction expert. However, the exclusion was based upon an objection addressing the propriety of eliciting any expert testimony as an invasion of the jury's province.[3] The objection did not attack the qualifications of the witness. To the contrary, the *Shelby* court expressly recognized the witness as a highly qualified accident reconstruction expert and noted the objecting party conceded the sufficiency of the expert's qualifications. We therefore believe *Shelby* and *McClure*, relied upon by Robinson, are clearly distinguishable from the case at bar.

■ There can be no fixed standard as to the amount or kind of knowledge required to classify any witness as an expert, but if such witness is shown to have knowledge so as to render him or her competent to give an opinion on the matter before the court he or she will be considered an expert. *Tomchany v. Tomchany*, (1962) 134 Ind.App. 27, 185 N.E.2d 301. Moreover the qualifications of an expert do not necessarily go to the admissibility of his or her testimony, but rather to the weight to be given to such testimony. *Spencer v. State*, (1958) 237 Ind. 622, 147 N.E.2d 581; *Slagle v. State*, (1979) Ind.App., 393 N.E.2d 798. Generally,

engineers and police officers fall within the classifications of experts competent to render an opinion on the speed of an automobile in accident cases. 13 I.L.E. *Evidence* § 291 (1959). *Annot.* 29 A.L.R.3d 248 (1970); see *McCraney v. Kuechenberg*, (1969) 144 Ind.App. 629, 248 N.E.2d 171. We find Ulrich's competency to render an expert opinion on the speed of the Robinson vehicle to be amply supported by the record. Initially, we emphasize his testimony did not involve reconstruction of the automobile accident but only the computation of the speed of an airborne object. In this regard, Ulrich possessed particular skill which rendered his opinion of aid to the jury under the particular circumstances involved here. We thus find no basis for excluding Ulrich's expert opinion on the issue of the computation of the speed based upon the distances traveled by an airborne object.

■ Furthermore the exclusion of such competent expert testimony may constitute reversible error. For example, in *Spencer v. State, supra* Spencer was charged with forgery and sought to introduce the opinion of two witnesses on the genuineness of the questioned signature. The two witnesses were bank employees generally charged with the duty of determining the authenticity of questioned signatures. The evidence showed these individuals made the final decisions for the financial institutions and were experienced in that particular field. Since bank employees were competent witnesses and fell within the classification as experts in the field of examining signatures, the Indiana Supreme Court held it was error to exclude such testimony and reversed with instructions to grant a new trial. This was in accord with the general rule that a reversal may be predicated upon the erroneous exclusion of evidence which affects the substantial rights of the parties. Ind.Rules of Procedure, Trial Rule 61. In the instant case the City's defense of contributory negligence relied heavily upon its contention that Robinson was traveling at the rate of 60 miles per hour at the time of

---

**3.** Robinson raises a similar objection which we address *infra*.

the accident. Since Ulrich was particularly well qualified to render an opinion on the speed of an airborne object, and was the only witness on this critical issue, we believe the exclusion of his testimony was clearly an abuse of discretion.

*Sufficiency of the Hypotheticals*

■ It is well settled that an expert witness with no first hand knowledge of the incident in question may be asked for an opinion based upon a hypothetical statement of the facts if the facts are already in evidence. *Davis v. Schneider, supra.* The City alleges the hypotheticals were based on the testimony of Richard Dorsey, an officer with the Indianapolis Police Department who investigated the accident on the night in question. On the other hand, Robinson's objections alleged the failure of the hypotheticals to correctly incorporate the testimony previously admitted.

The targets of Robinson's continuing objections were the following questions:

"Hypothetically, Mr. Ulrich, if a vehicle traveling on a street left the surface of that street and went across an open area, a creek area from one bank to the other, for a distance of some eighty feet and dropped a distance of twenty feet, are you able to form an opinion as to the speed of that object?

. . . .

Assuming that a 1958 Jaguar would be traveling on a level plane at a speed of twenty-five to thirty miles an hour and assuming that that vehicle came to the edge of an area which fell off rapidly to the depth of twenty feet, how far would that vehicle travel before it came to rest?"

Specifically Robinson contends there is no support in the record for incorporating the measurements of 80 feet as the distance traveled or 20 feet as the depth of the precipice. Rather, Robinson contends the record establishes 50 feet as the "vertical drop." He additionally contends there is no evidence indicating the point where Robinson's vehicle *impacted* with the opposite bank but only the point where the automobile came to rest.

■ In Indiana, hypothetical questions are not insufficient because they do not include all pertinent facts from the evidence. *Dahlberg v. Ogle*, (1978) 268 Ind. 30, 373 N.E.2d 159; *Davidson v. State*, (1893) 135 Ind. 254, 34 N.E. 972. As explained in *Davidson*,

"[i]n the examination of expert witnesses, counsel may embrace in his hypothetical question, such facts as he may deem established by the evidence, and if opposing counsel does not think all the facts established are included in such question, he may include them in questions propounded on cross-examination. Any other course would result in endless wrangles over the question as to what the facts were and what were not established."

*Id.* at 261, 34 N.E. at 974. Therefore, if the objecting party deems questions to be unfair the remedy is afforded via cross-examination. A hypothetical question is therefore sufficient if it incorporates *a fair representation* of the facts introduced into evidence. *Seidman, supra* at 22.

■ In the instant case, although there was some indication that the vertical drop measured approximately 50 feet[4] rather than 20 feet, there was also substantial evidence indicating that the latter measurement was correct. While referring to a diagram drawn during trial, Captain Dorsey testified on this point as follows:

"A. . . . . Okay, then from right here where the barricade to what I call the face of the—where the bridge was—it is 37.6 feet, thirty-seven

---

4. We note however that the testimony of Captain Dorsey, which supports Robinson's view of the evidence, indicates that the reference to 50 feet designated the horizontal distance rather than the vertical drop:

"Q. [by Robinson's attorney] Did you make the statement in your police report that the

vehicle sailed over the creek onto the sandbar 50 feet below?

. . . . .

A. It wasn't a 50 feet [sic] drop. It was 50 feet over."

and a half feet from where the barricade was at the time until this drop-off that goes into the river bed. And then from the bottom of the creek bed to the top where you can stand is fourteen and a half feet, but you are on a slope. It's still another five, five and a half feet up to the roadway. And otherwise, if I'm looking directly out random to the east, it comes down here now. The hill comes down because there was a bridge that went across there at one time and then underneath the bridge was a sloping hill and so once you're standing right here to look up, we measured it up to the top. It was another five and a half foot *from the bottom of the creek to where the top of the roadway would have been would have been twenty feet.* And then I took my tape and went from this side of the creek directly where the old guttings from the old bridge were over to where—over to the sandbar on the hill where the car had landed. This was forty-two and a half feet and the forty-two and a half and the thirty-seven and a half feet back to where the guard rail was altogether was an overall total, *just a little over eighty feet from where the car had hit the guard rail and careened over to the side.*"

Q. To where it *impacted* with the opposite bank?

A. *Yes, sir."* (Emphasis added.)

The above evidence clearly supports the measurements incorporated into the hypothetical questions.

▓▓▓▓ Robinson briefly intimates that other factors were critical to any opinion on the speed of the Robinson vehicle, without specifying what other factors might have been necessary. We acknowledge the facts needed to form the opinion must be included in the hypothetical. *McCraney v. Kuechenberg, supra.* We are also aware of

other Indiana cases finding other factors indispensable under certain circumstances *to* establish the speed of the vehicle involved in an accident. *E. g., McCraney v. Kuechenberg, supra.* These factors often include the size and weight of the vehicles involved, the type and condition of the highway surface, the friction coefficients, the grade of the highway at the point of impact, and the length, depth and intensity of skid marks, if any.

In the case at bar, we are confronted with what appears to be a vitally different set of circumstances. Although Ulrich's testimony sought to establish the speed of Robinson's vehicle immediately *before* he became airborne, the calculation was based on components of the distance traveled *after* the vehicle took flight. For example, Ulrich testified the weight and size of a vehicle *is not* a consideration in computing the speed of an airborne object. He also noted the effect of wind resistance was negligible. In other words, the calculation of Robinson's speed was not in any way dependent upon road surface conditions and similar considerations which normally complicate traditional accident cases.

In any event, if in fact Robinson believed other factors or measurements were pertinent to a computation of the speed of his vehicle, his proper remedy is afforded via cross-examination.[5] *Walters v. Kellam & Foley,* (1977) 172 Ind.App. 207, 360 N.E.2d 199. For example, in *Jones v. State,* (1981) Ind., 425 N.E.2d 128, the Indiana Supreme Court allowed the results of a scientific test, never before recognized in Indiana, comparing bullets taken from the defendant's pocket at the time of his arrest with the bullet found in a robbery victim. In response to the defendant's challenge regarding admission of the test results, the Court explained: "the persuasiveness of evidence produced by such a test is, in large measure, dependent upon the expertise of the witness who conducted it, which in the final analysis is to be determined by the jury, only after an opportunity of careful

---

5. Robinson presented no accident reconstruction expert witness nor did he seek to examine

any unbiased witnesses with a view toward ascertaining the speed of the vehicle.

cross-examination." *Id.* at 131.[6] We must therefore conclude the trial court erred in sustaining Robinson's objections to the hypotheticals.

### Invasion of the Jury's Province

■ Based on Ulrich's qualifications and the sufficiency of the hypotheticals, the City argues the trial court's exclusion of Ulrich's opinion was contrary to law. On the other hand Robinson urges wholesale adoption of a rule which accords a trial court absolute discretion to exclude expert testimony on accident reconstruction matters. We cannot adopt Robinson's view of the law. The trial court's discretion in such matters is indeed broad, but it is not boundless.

The primary authority for Robinson's contention is *Shelby National Bank v. Miller, supra,* which reviewed numerous precedent authorities excluding accident reconstruction testimony as an invasion of the jury's province. The *Shelby* Court expressly recognized that the sole objection to the proffered expert testimony urged that the question called for an answer which was completely within the province of the jury. This objection was sustained by the trial court and the plaintiff made an offer to prove that the expert's opinion would indicate the defendant was in fact traveling in excess of 30 miles per hour. After reviewing numerous authorities which indicated the speed of the automobile in an accident case was a question of ultimate fact solely for the jury's determination, the *Shelby* Court held it was not reversible error to exclude the expert witness's testimony.

The reasoning employed in *Shelby* and its precedent authorities is no longer well accepted in Indiana. *State v. Bouras, supra.* In *DeVaney v. State,* (1972) 259 Ind. 483, 288 N.E.2d 732, our Supreme Court rejected the rule which had excluded expert opinion evidence on ultimate facts in issue as an invasion of the jury's province. Noting that such exclusion has been abolished in a majority of jurisdictions, the *DeVaney* Court explained as follows:

" 'This change in judicial opinion has resulted from the fact that the rule excluding opinion on ultimate facts in issue is unduly restrictive, pregnant with close questions of application and the possibility of misapplication, and often unfairly obstructive to the presentation of a party's case, to say nothing concerning the illogic of the idea that these opinions usurp the function of the jury.' [quoting McCormick on Evidence, 27–28 2nd ed. 1972)].

The argument that such an opinion usurps the function of the jury is simply not valid. When the opinion is given, the witness has no such intent and could not accomplish this feat even if he wanted to for the simple reason that the jury is free to reject the opinion and accept some other view.

We therefore hold that an opinion by an expert witness upon an ultimate fact in issue is not excludable for that reason. To the extent that prior cases, including *Stroud [v. State* (1971) [257] Ind. [204], 273 N.E.2d 842;] *Ellis [v. State* (1969), 252 Ind. 472, 250 N.E.2d 364;] *Baker [v. State* (1964), 245 Ind. 129, 195 N.E.2d 91], are in conflict with this holding they are hereby overruled. Assuming the matter upon which the expert in the case at bar testified was an ultimate fact in issue, it was not error to permit it in light of our holding."

*Id.* at 490, 288 N.E.2d at 736–37. Significantly, *DeVaney* involved the admission of testimony by an accident reconstruction expert on the point of impact in an automobile accident. The expert's opinion indicated that the defendant had crossed the center line at the time of the accident.

■ We believe *DeVaney* is compelling authority for the rejection of the *Shelby* rationale for excluding expert opinions in automobile accident cases. As explained in *DeVaney,* an expert's opinion in such matters does not invade the province of the

---

**6.** Justice Hunter dissented in *Jones,* based upon the expert's opinion that the test results indicated only that the bullets "could have come" from the same source as the bullet removed from the victim. There is no such qualification of the expert's opinion in the instant case.

jury. Rather the jury is free to reject the expert's opinion and in fact other questions are left open for jury determination. For example, even assuming the jury accepted Ulrich's opinion that Robinson was traveling at the rate of 60 miles per hour, admittedly an ultimate fact in issue, there would remain for the jury the question of whether such speed was the proximate cause of his injuries. *See Indianapolis Union Ry. v. Walker*, (1974) 162 Ind.App. 166, 318 N.E.2d 578. We must therefore conclude the proposed expert testimony was not an invasion of the jury's province, was improperly excluded, and resulted in reversible error.

Since we must reverse and remand for a new trial, it is not necessary to address the City's further contention that the damages were excessive.

The judgment is reversed and the cause remanded for a new trial.

CONOVER and YOUNG, JJ., concur.