ESTATE OF Duane HUNT, et al., Appellants,

v.

BOARD OF COMMISSIONERS OF HENRY COUNTY, et al., Appellees.

No. 89A04–8607–CV–231.

Court of Appeals of Indiana, Fourth District.

Aug. 22, 1988.
Rehearing Denied Oct. 17, 1988.

Douglas Norris, Cambridge City, David W. Dennis, Dennis & Bertesch, Richmond, for appellants.

Robert A. Smith, Lewis Bowman St. Clair & Wagner, Indianapolis, for appellees.

MILLER, Judge.

The Estate of Duane Hunt filed this suit against the Henry County Board of Commissioners alleging the county's negligent maintenance of a road caused Hunt's death. The suit was brought on behalf of Twila Hunt, Duane's dependent sister. The jury returned a general verdict against the estate. The estate appeals, alleging the trial court committed a variety of errors in the admission of evidence and the instruction of the jury as to the law. We find no error and affirm.

## ISSUES

The estate raises eight issues for our review. Several of these issues are restatements or variations of the same basic complaints. In order to facilitate our discussion of the issues, we consolidate them:

I. Did the court err in allowing the county's expert, John Weichel, to testify as to the car's minimum speed and to contributing causes of the accident?

II. Did the court err in allowing the investigating police officer, Daniel Ross, to testify as to the car's speed and to contributing causes of the accident?

III. Did the court erroneously instruct the jury on the issue of contributory negligence?

## FACTS

On July 27, 1982, Duane Hunt drove to Glenwood, Indiana to take Jason, Ryan, and Christina Stewart to a little league baseball game in Cambridge City. After picking them up, he drove east on County Line Road in Henry County. The car crested a small hill and hit one or both of two large depressions in the road at the bottom of the hill. Duane attempted to maintain control of the vehicle, but was unable to do so. The car left the roadway, traveled in an arc through a fence and through a grassy field, and eventually came to rest against the bank of a small creek.

Duane suffered chest and shoulder injuries in the accident, but none of his injuries appeared to pose any threat to his life. He was taken for treatment to the emergency room of the Fayette County Hospital in Connersville. The emergency room staff took Duane's vital signs, which appeared normal, before treating him for his injuries. Several hours later, however, he suffered a severe heart attack. The emergency room staff stabilized his condition and transferred him to the coronary care unit. Several days later, Fayette County transferred Duane to St. Vincent's Hospital in Indianapolis. There, he suffered a second and fatal heart attack.

The evidence of causes contributing to the accident produced at trial showed the depressions in the road's surface were

quite large. They reached a maximum depth of eight to ten inches and the two holes together covered almost the entire width of the road. The evidence conflicted as to the speed of the car. The speed limit on County Line Road at the place of the accident was fifty-five miles per hour. One of the passengers testified the car traveled at 45 miles per hour as it approached the hill, but he was unable to fix the speed when the car hit the holes. The estate's accident reconstruction expert, Louis Daniel Metz, testified that he believed the car was traveling 55 miles per hour when it hit the holes, but he also conceded the car could have been traveling at a higher speed. State trooper, Daniel Ross, who investigated the accident, estimated the car's speed to be 55 miles per hour when Duane lost control. Finally, the county's expert, John Weichel, opined the car's minimum speed was at least 55 miles per hour, but due to uncertainty as to some variables, the speed could have been as high as 65 miles per hour. The two expert witnesses and the state trooper all agreed that the depressions and, at least in some sense, the speed of the car contributed to the accident.

## DECISION

**ISSUE I:** *Challenges to the testimony of the county's expert Weichel*

 *A: Should Weichel's opinion, based in part on hearsay, have been excluded?*

Weichel testified in answer to a hypothetical question that speed was a contributing factor to the accident. His answer was based upon a review of:

1. The unpublished depositions of police officers Ross and Sheets;

2. The unpublished depositions of two of the surviving passengers in Hunt's car;

3. The police report which was not in evidence;

4. Weichel's own visit to the scene of the accident;

5. Photographs in evidence of the wrecked car;

6. The unpublished deposition of the expert for the estate, Metz;

7. Weichel's own calculations.

The estate contends that the depositions of the police officers and the passengers and the police report, numbers 1, 2, and 3 above, are hearsay and Weichel's opinion which considered this hearsay is of no probative value and should have been excluded. We agree with the general rule which supports the exclusion of expert opinion when it does not appear that the opinion was based independently of hearsay matter. *Davis v. Schneider* (1979), 182 Ind. App. 275, 395 N.E.2d 283; *Rosenbalm v. Winski* (1975), 165 Ind.App. 378, 332 N.E. 2d 249.

In addressing this issue, we observe that an expert may testify on the basis of first hand knowledge or facts in the record. He may also express his opinion upon assumed facts supported by the evidence and stated to him by way of a hypothetical question. *Senco Products, Inc. v. Riley* (1982), Ind. App., 434 N.E.2d 561, 133 A.L.R.4th 1173. The facts needed to form the opinion must be included in the hypothetical question asked of the expert witness. But, the question may omit trivial or non-material facts. *City of Indianapolis v. Robinson* (1981), Ind.App., 427 N.E.2d 902. An expert may rely upon hearsay testimony along with his personal observations to formulate his opinion provided the hearsay relied upon is of the type customarily relied upon by such experts. *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148.

The testimony of a police officer and a police report served as the basis of the expert opinion offered in *City of Indianapolis v. Robinson, supra.* However, it is not clear whether the expert relied on an unpublished deposition of a police officer or whether the police report was admitted into evidence. The present issue was not before the court and therefore these pertinent facts were not set out. Nevertheless, we note that this hearsay is of the type customarily and reasonably relied upon by expert accident reconstructionists. In any event, the significant measurements contained in the police report relied on by

Weichel were introduced into evidence by Trooper Ross at trial.

However, the county failed to present evidence that the depositions of the two passengers in Hunt's car were typical of evidence customarily relied upon by accident reconstructionists. The estate would have us rely on the case of *Rosenbalm v. Winski* (1975), 165 Ind.App. 378, 332 N.E. 2d 249. In *Rosenbalm*, a police officer was allowed to give his opinion that a fire truck entered an intersection unsafely against the light without its emergency flashing lights on. His opinion was primarily based upon the testimony of six eyewitnesses who gave estimates of the fire truck's speed. The court held that it was error, albeit harmless error, to allow the police officer to give his opinion because it did not "appear that the hearsay was a type regularly found reliable and customarily relied upon, *nor does it appear that the evidence was founded independently of the hearsay.*" *Id.* 332 N.E.2d at 253 (emphasis ours).

Weichel's opinion of Hunt's speed was based primarily upon the application of a scientific model to the measurements taken by Trooper Ross at the scene. He computed Hunt's speed using the "cord and moment" model based on the measurements of skid or yaw [1] marks and the distance the car traveled off the road to where it came to rest. It does not appear that Weichel relied on the two passenger's depositions much, if at all. As an expert, Weichel could draw upon all sources of information coming to his knowledge or through the results of his investigation in order to enable him to formulate an opinion concerning the speed of Hunt's car. The fact that he read unpublished depositions does not render his opinion hearsay. He is competent to judge the reliability of the statements in the depositions and use these statements together with his own observations and calculations to comprise a sufficient basis for a direct expression of his own professional opinion as to the speed of the car upon impact with the chuckholes.

*Trinity Universal Ins. Co. v. Town of Speedway* (1965), 137 Ind.App. 510, 210 N.E.2d 95. An "otherwise validly drawn expert opinion should not be rendered inadmissible merely because somewhere along the way the expert was exposed to an item of hearsay which he may have 'considered' in that it appeared to corroborate or not dispute his conclusion." *Rosenbalm, supra,* 332 N.E.2d at 252, 253.

 *B: Should the court have excluded Weichel's estimate of Hunt's actual speed because it utilized undisclosed methods of computation and was based on speculative changes in assumptions?*

Weichel estimated Hunt's minimum speed at 55 miles per hour upon impact with the chuckholes using conservative assumptions. He then relaxed these assumptions and opined Hunt's actual speed at between 55 and 65 miles per hour. The estate contends that Weichel did not explain the scientific model he used nor did he state the changes in his assumptions. The estate argues that Weichel was erroneously allowed to pull his estimate "out of the air" to serve the interests of the county.

We acknowledge that "[e]xpert opinion testimony should not be allowed to extend to the area of baseless conjecture concerning matters not susceptible of reasonably accurate conclusions, ..." *Town of Newburgh v. Jones* (1945), 115 Ind.App. 320, 58 N.E.2d 938 at 940. This rule guards against the trier of fact adopting an expert's opinion which is based on false or inapplicable facts. *Weinstock v. Ott* (1983), Ind.App., 444 N.E.2d 1227. Here, Weichel stated in the record that he used the "cord and moment" method and explained that it estimates a curved path by defining circles upon three known points. Both Weichel and Hunt's expert, Metz, were required to make certain factual assumptions as input in their calculations. These assumptions included the spot Hunt began braking or yawing, the different coefficients of friction of tires on pavement

---

1. Yaw is defined as "to deviate erratically from a course." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976). Hunt's car struck the chuckhole and "spun out." The skid marks left on the road were curving marks or yaw marks.

and tires on grass, and how close to the right side of the road Hunt's right tires were when they hit the chuckhole. Both experts, Weichel and Metz, estimated Hunt's minimum speed to be 55 miles per hour using the most conservative set of assumptions. Weichel testified that he then assumed that Hunt started braking or yawing a little earlier and that the right tires were at various distances from the edge of the road to arrive at his opinion of Hunt's actual speed of between 55 and 65 miles per hour. Significantly, Hunt's expert, Metz, testified on cross-examination that the right hand wheels were probably not on the edge of the road as he had assumed in his calculations but somewhere in the right lane. He admitted that this change of assumptions would slightly increase his estimate of Hunt's speed upon impact with the chuckholes.

The estate's allegation of error is not supported by the record; Weichel was not permitted to engage in conjecture. The scientific model he utilized, his assumptions, and the changes he made in those assumptions are clearly stated in the record. If the estate deemed questions to be unfair because they did not include all pertinent facts or did not incorporate a fair representation of the facts, the remedy afforded was cross-examination. *City of Indianapolis v. Robinson, supra.*

We note that Weichel's testimony is typical of an expert witness concerning the physical aspects of the accident and his employment of scientific formulas. The formula Weichel employed was based on the exact science of physics. But, the determination of Hunt's speed could not be determined exactly because the factual input in the formulae had to be assumed or estimated. This is the purpose of an expert. He or she must use knowledge and experience to make reasonable estimates upon which to base an opinion. There was no error in the admission of Weichel's testimony.

ISSUE II: *Challenge to Trooper Ross's Testimony*

■ Trooper Ross was permitted, over the estate's objection as to his qualification as an expert, to give his opinion *as of the time of trial* of the cause of Hunt's accident.[2] Ross had been a state trooper for twenty months *before* the accident. He attended the Indiana State Police Academy where he was trained in accident investigation and basic reconstruction. Before Hunt's accident he had investigated approximately two hundred other accidents. *After* the accident Ross attended the Northwestern Traffic Institute and obtained the title of Technical Accident Investigator.

The estate claims that no Indiana case has admitted the testimony of a police officer as an expert accident reconstructionist with as little experience and training as Ross had *before* Hunt's accident. The estate also correctly contends that Ross's status as a police officer does not automatically qualify him to testify as an expert on the speeds of motor vehicles. *Posey County v. Chamness* (1982), Ind.App., 438 N.E.2d 1041. In *Terre Haute First Nat. Bank v. Stewart* (1983), Ind.App., 455 N.E.2d 362, we held it harmless error for a deputy who held a master's degree in law enforcement, graduated from the Indiana Law Enforcement Academy, and had several years experience to give his opinion as an expert of the speed of a vehicle by making reference to tables in the "Traffic Accident Investigation Manual." The deputy stated that he was not an expert, was only generally familiar with the tables, and that it was an

---

2. The relevant part of Ross's examination is as follows:

Q. Now at this time, Trooper Ross, I would ask you, if you, at the time—as of today, have formed an opinion as to the factors that you could identify as causing this accident; yes or no?
A. Yes.
Q. And what is your opinion as to the contributing causes of this accident?

[three pages of transcript are devoted to Hunt's objection]
A. I believe contributing circumstances would have been the chuckholes in the roadway, possibly the driver not knowing the roadway and possibly speed. These are all possible contributing circumstances to the accident.

area in which an expert witness should testify. The estate relies on *Terre Haute First Nat. Bank* and other authority in arguing that Ross's background was insufficient to qualify him to speak as an expert on the contributing factors of the accident, and argues the court abused its discretion in allowing the testimony.

Neither party argues that expert testimony is inappropriate in the area of accident reconstruction. On the contrary, both parties put on their own accident reconstructionists. Both parties acknowledge that a witness must be qualified to testify as an expert. A modern approach to the rule of the admissibility of expert testimony was taken in *Summers v. State* (1986), Ind.App., 495 N.E.2d 799.[3] The rule of *Summers*, as cited with approval[4] by our supreme court, is as follows:

> "The witness must be qualified by knowledge, skill, experience, training, or education to give such testimony [a police expert testified as to order in which shots were fired] and the trial court must determine if its admissibility would aid the jurors in understanding the facts. *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, 803." *Mihay v. State* (1987), Ind., 515 N.E.2d 498, 500.

The determination of whether a witness is qualified to give an opinion is within the trial court's discretion. No precise knowledge is required; the witness must simply show an acquaintance with the subject such as to qualify him to give an opinion. *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149. However, the extent of the witness's knowledge affects the weight of his testimony which is within the jury's province to determine. *City of Bloomington v. Holt* (1977), 127 Ind.App. 650, 361

N.E.2d 1211. We will reverse only if the trial court has abused its discretion, that is, drawn an erroneous conclusion clearly against the logic and effect of the facts and circumstances or the reasonable and actual deductions to be made from such evidence. *Underhill v. Deen* (1982), Ind.App., 442 N.E.2d 1136.

The standard of abuse of discretion is exceptionally stringent in this type of case. In *State v. Bouras* (1981), Ind.App., 423 N.E.2d 741, we upheld a state trooper's qualification to testify as an expert about an automobile accident. *Bouras* was a wrongful death action filed against the State of Indiana alleging the negligent design, construction, and maintenance of a highway. The trooper in *Bouras* opined that the proximate cause of the automobile accident was the improper banking of the highway. The trooper was not demonstrated to possess any expertise in highway design, construction, or maintenance. His qualifications were established on the basis of his education and experience as a police officer. He had received training at two police academies and had two years experience investigating traffic accidents. He had repeatedly driven the particular stretch of highway in question and had investigated earlier accidents at the scene.

Trooper Ross's opinion was based upon his knowledge and training *as of the time of trial.* (see footnote 2) Therefore, his testimony benefited from the advanced training he received *after the accident* at the Northwestern Traffic Institute. He did admit that had he had this training before the accident he would have taken additional measurements and could have computed an

---

**3.** For an excellent discussion of the status of the rule for Indiana expert testimony admissibility see C.J. Ratliff's concurring opinion in *Hughes v. State* (1987), Ind.App., 508 N.E.2d 1289 at 1305.

**4.** The reliance on the rule of *Summers* by our supreme court in *Mihay* may have only been dicta because the court went on to say that Mihay was not prejudiced by the admission of the police officer's testimony as it was merely cumulative and of little probative value. Also, two weeks later in the case *Brooke v. State*

(1987), Ind., 516 N.E.2d 9, our supreme court relied on *Wade v. State* (1986), Ind., 490 N.E.2d 1097 in applying the older, well established two-prong test for expert admissibility. The two-prong test requires: First, the subject matter of the testimony must be beyond the understanding of a layman to assess the evidence presented and draw an informed conclusion. Second, the witness must have sufficient skill and knowledge in the field to aid the trier of fact in its search for the truth. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896.

estimated minimum speed of Hunt's car upon impact with the chuckholes.

We find no abuse of discretion in allowing Trooper Ross to testify as an expert. Ross's testimony that one of the contributing causes of the accident was "possibly speed" was consistent with and cumulative to the testimony of the other experts. The court was aware of Ross's qualifications at the time he testified; the jury knew of the factual basis for his opinion. Ross's opinion, based on his education and experience, was of some aid to the jury in understanding the accident. We would be reluctant to reverse the trial court even if Ross's testimony had been based on his training at the police academy and experience investigating two hundred accidents. However, we have no hesitation in affirming the trial court since at the time of trial Ross had achieved the designation of Technical Accident Investigator. Under the circumstances, the court's determination of Ross's qualification was not so clearly against the logic and facts before the court to warrant reversal.

ISSUE III—*Challenge to Final Jury Instruction No. 6*

■■■■ Hunt's estate contends that the following jury instruction misstates the law and constitutes reversible error:

*No. 6*

"Should you find the defendant guilty of negligence, resulting in and causing the plaintiff's injury, you may then proceed to determine whether or not the plaintiff was guilty of any contributory negligence.

5. The estate also argues that instruction 6 constitutes error by confusing the jury because the phrase, regardless of its extent, instructs that there are no degrees of negligence. (The law in effect is contributory negligence and not comparative fault because the accident took place in 1982) The Indiana Pattern Jury Instructions, Sec. 505, discourage the giving of instructions that there are no degrees of negligence because such instructions are apt to confuse the jury. But, the estate failed to object at trial to instruction 6 on these grounds and therefore this allegation of error is waived. *Murphy v. Indiana Harbor Belt R. Co.* (1972), 154 Ind.App. 103, 289 N.E.2d 167. Hunt's objection to instruction 6 is as follows:

There can be no recovery if such negligence, regardless of its extent, contributes to the happening of the accident, or the injuries sustained by the plaintiff because an injured person cannot, in law, recover when he is guilty of contributory negligence."

The alleged flaw in the instruction is that it allows the jury to find against Hunt if his conduct contributed, regardless of the extent, to the accident.[5] Hunt's estate contends that number 6 misstates the law by omitting the essential element of proximate cause. In order for a plaintiff's negligence to bar his recovery, his negligence must be a proximate cause, not a remote cause, of his injuries. *Cousins v. Glassburn* (1940), 216 Ind. 431, 24 N.E.2d 1013.

The estate admits that number 6 is not mandatory. When an instruction is not mandatory in nature, it must be considered with all of the other instructions given to the jury and ambiguity, inaccuracy or incompleteness of one instruction may be cured by another instruction not inconsistent therewith. *Shelby National Bank v. Miller* (1970), 147 Ind.App. 203, 259 N.E.2d 450, trans. denied; *Coffey v. Wininger* (1973), 156 Ind.App. 233, 296 N.E.2d 154.

The jury was adequately instructed that proximate cause was a necessary element in the determination of Hunt's contributory negligence. Final instructions numbered 7 and 8 read as follows:

*No. 7*

"Contributory negligence on the part of Duane Hunt is an issue in this case. In this case, contributory negligence is the

MR. DENNIS: If the Court please, the plaintiffs object to Instruction No. 6 as drawn for the following reasons: First, that we feel that the word, proximately should be inserted before the word, contributes, in the second paragraph in order to correctly state the law; and secondly, we feel that the phrase in the beginning of the second paragraph, regardless of its extent, should be stricken because it is redundant and over emphasizes contributory negligence to the detriment of the plaintiffs. If it's contributory negligence, it operates as a bar and regardless of its extent, is unnecessary and over-emphasizes.

failure of Duane Hunt to use reasonable care to avoid injury to himself, which failure is a proximate cause of the injuries for which his Estate seeks to recover.

Duane Hunt was required to exercise that degree of care that an ordinary, reasonable person would exercise in like or similar circumstances.

If you find that by want of ordinary care, Duane Hunt proximately contributed to his own injuries, or that by exercise of ordinary care he might have avoided his injuries, then you may find that Duane Hunt was contributorily negligent and his Estate and his dependents and beneficiaries are completely barred from recovering damages, even though you may have found that the defendant was also negligent.

The defendant has the burden of proving by a preponderance of evidence that Duane Hunt was guilty of such negligence.

### No. 8

Contributory negligence is the failure of a plaintiff to use reasonable care to avoid damage to himself which failure is a proximate cause of the damages for which he seeks to recover."

The jury could not have misunderstood that Duane Hunt's negligence need only be a remote cause of his injuries to bar his recovery. Numbers 7 and 8 supply the allegedly missing element of proximate cause; any ambiguity created by number 6 is cured by numbers 7 and 8. In *Coffey, supra,* the instruction under scrutiny provided a list of elements for legal fraud but omitted the element of inducement. But, another instruction listed all the elements of legal fraud including inducement. The court found no error and held that when the challenged instruction was read in conjunction with the one which included the element of inducement the jury could not have been misled.

Number 6 was not as ambiguous or incomplete as the instruction challenged in *Coffey.* The *Coffey* instruction attempted to set out the elements of legal fraud but omitted inducement. Number 6 did not attempt to set out the elements of contributory negligence but rather informed the jury of the effect of contributory negligence if it were found to exist. Considering the instructions as a whole with reference to each other, the jury could not have been misled. We find no error with number 6.

Hunt's estate raises additional issues pertaining to the life expectancy of Duane Hunt's dependent sister, Twila. The issues concern damages. Because we affirm the jury's verdict exonerating Henry County from liability, we need not consider these issues.

The judgment of the trial court is affirmed.

CONOVER, P.J., and NEAL, J., concur.