**Mabel Bernice DAVIS,**
**Plaintiff-Appellant,**

v.

**K. D. SCHNEIDER, M.D.,**
**Defendant-Appellee.**

**No. 1–877A176.**

Court of Appeals of Indiana,
First District.

Sept. 28, 1979.

Glenn E. Davis, Sr., Davis & Davis, Indianapolis, Gerald G. Angermeier, Jewell, Crump & Angermeier, Columbus, for plaintiff-appellant.

Robert L. Stevenson, Stevenson, Marshall & Silva, Columbus, for defendant-appellee.

LYBROOK, Judge.

Mable Bernice Davis (Davis) was injured when the automobile in which she was a passenger collided with another automobile. She was thrown out and landed with her back draped across the curb, her feet extending into the street and her upper torso on the sidewalk. The automobile in which she was riding turned over and landed on her legs and hips, pinning her to the curb. The accident resulted in Davis' fractured spine and paraplegism.

Davis was taken by ambulance to the Bartholomew County Hospital where she was attended by Dr. K. D. Schneider, M.D. (Schneider). Davis brought suit against Schneider alleging negligence in his treatment of her, such negligence resulting in

her present degree of paralysis. The jury returned a verdict in favor of Schneider. Thereafter Davis filed a timely motion to correct errors, which was denied, and a timely praecipe. This appeal results.

We affirm.

In her motion to correct errors Davis presents the following issues for our review:

(I) Whether the trial court erred in denying Davis' motion to amend her complaint to conform with the evidence?

(II) Whether the trial court erred in refusing to give Davis' Instruction No. 8?

(III) Whether the trial court erred in refusing to give Davis' Instruction No. 9?

(IV) Whether the trial court erred in giving Schneider's Instruction No. 6 over Davis' objection?

(V) Whether the trial court erred in giving Schneider's Instruction No. 3 over Davis' objection?

(VI) Whether the trial court erred in allowing Dr. Charles Cure to testify concerning Davis' injury and the effect upon said injury that negligence by Dr. Schneider in the treatment of Davis might have caused?

(VII) Whether the trial court erred in allowing into evidence expert testimony concerning Davis' injury and the effects of Schneider's treatment of the injury, which showed that no act or omission by Schneider contributed to, or aggravated, Davis' injury?

(VIII) Whether the trial court erred in applying the "best evidence rule" to tendered evidence concerning Davis' bills from the Chicago Rehabilitation Institute?

(I)

At the close of Schneider's case-in-chief, Davis moved to amend her complaint by interlineation to allege that Schneider was negligent and careless in his treatment, examination and diagnosis of her *by and through his agents*, a nurse and other medi-

cal staff, members at Bartholomew County Hospital. The trial court denied the motion.

Ind. Rules of Procedure, Trial Rule 15(B) states:

"(B) Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it · is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

■ Amendments to pleadings, pursuant to T.R. 15(B), are allowed where facts are sufficiently pleaded in the original complaint which should have put the other party on notice as to the evidence presented at trial. *Thompson Farms, Inc. v. Corno Feed Products Division of National Oats Co., Inc.,* (1977) Ind.App., 366 N.E.2d 3. "[T]he policy behind T.R. 15(B) is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." *Ayr-Way Stores, Inc. v. Chitwood,* (1973) 261 Ind. 86, 300 N.E.2d 335, 338. Therefore, pleadings can, and should, be amended to conform to the evidence presented in the case. When a trial has ended without objection or qualification to its course, the evidence presented should control. *See also Puckett v. McKinney,* (1978) Ind.App., 373

N.E.2d 909. The pleadings should not operate to deprive the trier of fact of its duty or finding the facts which the evidence permits.

■ In the case at bar, no evidence was presented by Davis to show that an agency relationship existed between the "nurse" and Schneider, or other medical staff members and Schneider. All evidence concerning any agency relationship was presented by Schneider and was, in essence, negative evidence which refuted any agency relationship. Therefore, the trial court properly refused to grant Davis' motion to amend her pleadings.

### (II)

■ Davis' next allegation of error is that the trial court refused to give her tendered Instruction No. 8. This tendered instruction stated:

"An agency is the relationship that results from the consent by one person to act for another and subject to his control. The one who does the act is called the agent, and the one for whom the agent is acting is called the principal. If you find that the defendant, K. D. Schneider, M.D., is a principal and others acted as his agent at Bartholomew County Hospital, and further, if you find such agent was negligent, then you must find that the principal, K. D. Schneider, M.D., was negligent."

As mentioned above, Davis introduced no evidence addressing an agency relationship between Schneider and either a nurse at the Bartholomew County Hospital or staff members of that hospital. An instruction concerning such agency relationship was, therefore, not warranted. Instructions not pertinent to the issues presented at trial should be refused by the trial court. *Spence v. Downham,* (1967) 140 Ind.App. 385, 223 N.E.2d 587. *See also Horton v. Sater,* (1966) 140 Ind.App. 1, 221 N.E.2d 452.

### (III)

■ Davis next alleges that the trial court erred in refusing to give her Instruc-

tion No. 9 to the jury. This instruction stated:

"A doctor, in performing an examination or in diagnosing and treating a patient under his care, may not delegate to a nurse the responsibility to see that X-rays necessary to a diagnosis of the condition of the patient are, in fact, taken. The doctor is further under a duty to use reasonable and ordinary care in determining that proper X-rays were taken and the results of that X-ray examination."

As previously stated, the trial court need not give instructions pertaining to issues not presented before the court. *Spence, supra; Horton, supra.* Instruction No. 9 refers to a delegation of duty from a doctor to a nurse. Davis presented no evidence concerning this issue; therefore, the instruction was properly denied by the trial court.

Even if such delegation of authority had been pleaded, and evidence presented concerning such delegation, the refusal of Instruction No. 9 by the trial court was proper. To recover, Davis apparently is relying on the fact that Schneider gave oral orders to one Nurse Maupin to have X-rays taken of Davis' skull, ribs, legs and spine, and that Maupin only ordered X-rays of the skull, ribs and legs. We further assume that Davis intended to show that Maupin was Schneider's agent; thereby, Maupin's mistake in ordering X-rays was also the mistake of Schneider under a theory of *respondeat superior.*

■ If the above were the intent of Davis, a leading case refutes this theory of recovery. In *Keene v. Methodist Hospital,* (1971) 324 F.Supp. 233 (N.D.Ind.), it was determined that a physician's relationship to a hospital is that of an independent contractor, and that the hospital is not responsible for medical acts performed by him. A hospital is, however, responsible for the administrative and ministerial duties requisite to the operation of a hospital. *Keene, supra,* at 234. The manner in which physician's reports are recorded, and the channel through which such information is conveyed, are administrative matters. A hos-

pital is responsible for negligent failure of its administrators to provide such procedures.

In the case at bar, the parties agree that Schneider's oral orders to Nurse Maupin were properly transcribed onto hospital records by her, but she failed to include the orders to X-ray Davis' spine when she filled out the X-ray requisition. It was usual hospital procedure to fill out the X-ray requisition from the orders on the original hospital records. Consequently, only orders concerning X-rays of Davis' skull, ribs and legs were transmitted to the X-ray Department, and only such X-rays were taken.

The hospital had a duty to assure that Schneider's orders for X-rays were properly recorded and conveyed to the X-ray Department. It was an administrative duty for which the hospital was responsible. Therefore, Instruction No. 9 stating that "a doctor . . . may not delegate to a nurse the responsibility to see that X-rays . . . are, in fact, taken" was not, in its actual context, an appropriate instruction and was properly denied by the trial court.

### (IV)

Davis next contends that it was error for the trial court to give Schneider's tendered Instruction No. 6 which stated:

"You are instructed that in considering whether the defendant in his treatment and care of plaintiff exercised reasonable care and skill on medical issues, you cannot set up a standard of your own, but you must be guided in that regard by the testimony of medical doctors; and if you are unable to determine, from the testimony of these experts, what constitutes reasonable care and skill on medical issues under the circumstances of this case, then there is a failure of proof upon the only standard for your guidance, and the evidence is, therefore, insufficient to warrant a verdict for the plaintiff."

In *Longfellow v. Vernon*, (1914) 57 Ind. App. 611, 629, 105 N.E. 178, 184, this court held that:

"Whether the treatment of any particular injury or case was proper, or whether a surgical operation was skilfully performed, or whether a particular disease resulted from alleged negligent treatment, and like questions of science, must of necessity depend upon the testimony of physicians and surgeons learned in such matters, but such questions are not identical with the ultimate issue to be decided by the jury. (Citations omitted.) The foregoing rule does not have the effect of limiting or prescribing the testimony of nonexpert witnesses as to particular facts within their knowledge, which may bear upon questions depending for their ultimate solution upon scientific knowledge. In a malpractice suit, facts relating to the treatment and the condition of the patient may be stated by such witnesses, though they may be incompetent to give an opinion as to the value or effect of such facts from a medical or surgical point of view." (Citations omitted.)

Furthermore, in *Adkins v. Ropp*, (1938) 105 Ind.App. 331, 335, 14 N.E.2d 727, 729, this court said:

". . . The general rule in malpractice cases is that, in determining whether the physician and surgeon has [sic] exercised ordinary skill and care in the diagnosis of the disease and treatment of the patient and the result obtained thereby, the jury must be guided *solely* by the testimony of physicians and surgeons because of the scientific nature and character of the questions usually involved in such cases, and the jury cannot set up standards of skill and care of its own. (Emphasis added.)"

*See also Cochrane v. Lovett*, (1975) Ind. App., 337 N.E.2d 565, 570; *Worster v. Caylor*, (1953) 231 Ind. 625, 630, 110 N.E.2d 337; *Longfellow, supra*.

Instruction No. 6 was given to instruct the jury concerning the establishment of an appropriate standard of care owed by Schneider to Davis. We can see no basis for the jury being misled into believing that only physicians and surgeons could testify

as to what Schneider did or did not do, as opposed to the necessity of physicians and surgeons testifying exclusively about the standard of skill and care required of doctors in the locality. *See Cochrane, supra; Adkins, supra; Longfellow, supra.* Therefore, Instruction No. 6 was an appropriate and proper statement of the law.

### (V)

■ Schneider's Instruction No. 3, which Davis alleges it was error for the trial court to give to the jury, provides:

"I instruct you that if you find from a fair preponderance of the evidence that Dr. Schneider was negligent or unskilled in his treatment of the plaintiff, you cannot find for the plaintiff if you further find that Mrs. Davis' injuries were not due to nor connected with said negligence or unskillfulness, if any, but instead was due solely to the original injury, if any, for which Mrs. Davis sought medical treatment."

Davis makes the argument in her brief to this court that this instruction was mandatory and, as such, was defective because it failed to include all the elements necessary to preclude recovery, specifically the issue of negligent aggravation of injury and the issue of proximate cause. Davis' objection at trial to the giving of Instruction No. 3 merely stated, however, that:

"The plaintiff objects to instruction number 3 as modified for the reason it contains the language 'you cannot find for the plaintiff', which makes the instruction mandatory. Tends to confuse the jury."

Davis failed to specifically object to Instruction No. 3, before the jury retired, on the same basis that she argued to this court in her appellate brief. Therefore, pursuant to T.R. 51(C), this issue is waived. Furthermore, the instruction does not seem mandatory in nature. This instruction is merely a different way of stating the requirement that the plaintiff must prove proximate cause.

### (VI)

Davis alleges that it was error to allow Dr. Charles Cure to testify concerning her injury and the effect upon said injury that negligence by Schneider might have caused. Davis' objection to Dr. Cure's testimony was, essentially, that the hypothetical question posed to Cure assumed erroneous facts not supported by the evidence.

■ It is the law in this State that an opinion given in answer to a hypothetical question, which question is based upon facts not in evidence, cannot be proof of any issue and has no probative value. *Harrison Steel Castings Co. v. Daniels,* (1970) 147 Ind.App. 666, 263 N.E.2d 288.

■ In the case at bar, however, Dr. Cure was not asked a hypothetical question. Rather, he was asked a question of which he had firsthand knowledge of the underlying facts. If an expert witness has firsthand knowledge of material facts, questions to him need not be propounded in hypothetical form. The expert may describe what he has seen, give his expert inferences therefrom, and state his opinion. It would weaken expert testimony to propose a hypothetical question when the expert could base his postulations on firsthand knowledge. *See McCormick on Evidence* 31–32 (2d ed. 1972).

### (VII)

Davis further alleges that it was error to allow into evidence expert opinion testimony from Drs. Mohler, Echsner, Reed and Nelson, which opinions concerned Davis' injury and any aggravating or contributing effects that Schneider's treatment of the injury might have caused. Davis objected to this opinion testimony because the hypothetical question did not assume all of the facts necessary for the doctors to give such opinions, because the hypothetical question included facts not in evidence, because the opinion to be elicited by the question was the ultimate question for the jury, and because a proper foundation was not laid for the question.

An expert has the power to draw inferences from the facts which a jury would be incompetent to draw. However, before an expert opinion can be admitted into evidence, a proper factual foundation must be laid. Such foundation includes the qualification of the expert and the introduction of sufficient facts upon which an expert can base an opinion.

To qualify a witness as an expert, two elements must be met: 1) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the ken of laymen; and 2) the witness must have sufficient skill, knowledge or experience in that field as to make it appear that his opinion or inference will probably aid the trier in his search for the truth. *See* 13 I.L.E. *Evidence* § 294 (1959); *Smith v. Uniroyal, Inc.*, 420 F.2d 438 (7th Cir. 1970). The question of an expert's qualifications is for the trial judge's broad discretion and is reviewable only for abuse. *Matter of Adoption of Lockmondy*, (1976) Ind.App., 343 N.E.2d 793; *McCraney v. Kuechenberg*, (1969) 144 Ind.App. 629, 248 N.E.2d 171.

In the case at bar, the experts were each properly qualified by the trial court. Any argument contra is specious. Evidence was presented concerning each doctor's qualifications, and the trial court certainly did not abuse its discretion in allowing each doctor to qualify as an expert. Furthermore, an adequate factual foundation was laid for the hypothetical question propounded to each expert, as will be demonstrated in the discussion below.

Davis' objection that the hypothetical question did not assume all of the facts necessary for the individual doctors to give such opinions, and that the hypothetical question included facts not in evidence, is quite vague. Davis could have been more specific in her objection, at least indicating which facts were wrongly included or omitted in the hypothetical question. Since such specific objection was not made, nor were such specifics alluded to in the motion to correct errors, these allegations are waived pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Guardiola v. State*, (1978) Ind., 375 N.E.2d 1105. Furthermore, our perusal of the record indicates that the question asked of Drs. Mohler, Echsner, Reed and Nelson was based on facts that were in evidence, and that the facts in the question were clearly sufficient to allow an expert to base an opinion upon them.

Davis' contention that the hypothetical question asked of Drs. Mohler, Echsner, Reed and Nelson should not have been asked, because the opinion to be elicited by the question was the ultimate question for the jury, is simply without merit. As stated in *Lockmondy, supra*, at 796, "an opinion of an expert witness on an ultimate fact in issue is not objectionable for the reason that it invades the province of the trier of fact." *See also DeVaney v. State*, (1972) 259 Ind. 483, 288 N.E.2d 732.

(VIII)

Davis' final allegation of error is that the trial court erred when it refused to allow her to testify to the amount of a bill for services submitted to her by the Chicago Rehabilitation Institute (Institute).

Generally, in proving the terms of a writing, where the terms are material the original writing must be produced unless it is shown to be unavailable for some reason other than the fault of the proponent. Where the writing is not produced, parol evidence is inadmissible to prove the contents of the writing unless its absence is adequately explained. 12 I.L.E. *Evidence* ⊗81; *Supreme Tribe of Ben Hur v. Bastian*, (1926) 85 Ind.App. 327, 151 N.E. 346. As stated in *American United Life Insurance Co. v. Peffley*, (1973) 158 Ind.App. 29, 38, 301 N.E.2d 651, 657:

"The 'best evidence' rule does *not* operate, however, to indiscriminately exclude *all* secondary evidence. (Original emphasis.)

Indiana courts, at an early date, recognized that unavailability of a lost writing will permit introduction of other evidence

to prove the writing's content if the proponent satisfactorily demonstrates to the trial court that the original writing is lost. If he can show by a preponderance of the evidence that a diligent but unsuccessful search for the writing has been made in the place or places where it is most likely to be found, secondary evidence of the writing is admissible to prove content of the writing. (Citations omitted.)

Ordinarily it is within the discretion of the trial judge to make the preliminary factual determination whether an adequate showing of this sort has been made." (Citations omitted.)

The record shows that the case at the bar was filed in April, 1974. The matter was tried in March, 1977. Within the period of time between Davis' attendance at the Institute and the trial, Davis was unable to produce the bill she received from the Institute for services rendered to her. The record indicates that she made no effort to procure the original bill from the Institute, nor did she procure a copy of the bill from the Institute, in order to produce it as evidence at trial. Therefore, according to the "best evidence rule," the trial judge did not abuse his discretion in barring Davis' oral testimony concerning the amount of the Institute's charges.

Affirmed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.