**SENCO PRODUCTS INCORPORATED and J. R. Hahn, Company Incorporated, Appellants-Defendants,**

v.

**Jeff RILEY, Appellee-Plaintiff.**

No. 1–281A55.

Court of Appeals of Indiana, Fourth District.

April 22, 1982.

Rehearing Denied July 6, 1982.

Thomas H. Bryan, Fine Hatfield Sparrenberger & Fine, Evansville, for appellant-defendant, Senco Products Inc.

Robert T. Bodkin, Bamberger Foreman Oswald & Hahn, Evansville, for appellant-defendant, J. R. Hahn, Co., Inc.

John Wissner, Scales Wissner & Krantz, Boonville, for appellee-plaintiff.

YOUNG, Judge.

Defendants Senco and Hahn, manufacturer and distributor of Senco staple guns, appeal from a jury verdict awarding plaintiff $65,000 in damages upon a products liability claim for injuries sustained by plaintiff Jeff Riley when he was hit in the eye by a staple. Defendants argue that the trial court erred by:

1. Admitting plaintiff's expert witness's testimony without sufficient factual foundation;

2. Excluding testimony from a defense witness on the issue of warnings given in certain brochures;

3. Restricting cross-examination of the plaintiff concerning two prior inconsistent statements about the cause of the accident given to the worker's compensation insurance carrier and not permitting the jury to examine these documents;

4. Failing to grant defendants' motion for judgment on the evidence; and

5. Giving its Instructions number 3 and number 17.

On December 21, 1977, Riley, during his second day of employment at Corr-Wood Manufacturing, Inc. was using a Senco pneumatic staple gun[1] to build wooden boxes. Another employee was working with Riley and was stapling on the opposite side of the box. Riley had placed several staples into the box and was continuing to staple up the side of it when he placed the gun flat against the box, pulled the trigger, and felt a puff of air hit his right eye. As he reached up and felt the points of a staple sticking out of his eye, the staple fell out. After feeling the staple in his eye and seeing it fall, he laid the staple gun on the work table and called for help. At this time Riley also noticed that the guide plate of the staple gun was open. Riley's co-worker went to get the foreman who took Riley to the hospital for treatment. Sometime thereafter the co-worker also noticed that the guide plate of the staple gun was open. Workers continued to use this staple gun for the remainder of the workshift.

---

**1.** Defendants argue that the evidence of the identity of the gun as a Senco gun is insufficient. However, the evidence most favorable to the verdict, as discussed later in this opinion, would support a reasonable inference that the gun being used by Riley was made by Senco and distributed by Hahn despite Riley's testimony that he did not know who manufactured it.

However, no one knows what has since happened to that particular gun.

Defendants' first allegation of error is that the trial court erred in overruling objections to Riley's expert witness's testimony. The argument is unclear as to whether the defendants are contending that the expert was not qualified, whether his testimony, in general, did not have sufficient basis in fact, or whether the admission, over objections, of specific parts of the testimony constituted separate errors.[2]

Initially, we note that any error concerning the qualifications of Riley's expert is waived because defendants made no objections to his qualifications at trial.[3] *Zeigler Building Materials, Inc. v. Parkison*, (1980) Ind.App., 398 N.E.2d 1330; *Ramsey v. Complete Auto Transit*, (7th Cir. 1968) 393 F.2d 41. Even if not waived, the court committed no error. The question of an expert's qualifications is for the trial judge's broad discretion and is reviewable only for abuse of discretion. *Davis v. Schneider*, (1979) Ind.App., 395 N.E.2d 283. To qualify a witness as an expert, two elements must be met: 1) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the ken of laymen; and 2) the witness must have sufficient skill, knowledge or experience in that field as to make it appear that his opinion or inference will probably aid the trier in his search for the truth. *Id.* Here the mechanics of the operation and design of the tool as well as alternative designs are distinctly related to the engineering field. Defendants admit that the speed at which the tool operates and the forces involved are beyond the knowledge of the average person. In addition, the expert testified about his educational, practical and professional experience in engineering prior to rendering any opinion. He also explained how he examined the staple gun and its design. His qualifications were sufficient to justify the trial court's conclusion as to his expert status.

The defendants specifically state the focus of the objections is that there was insufficient factual foundation laid before the expert was allowed to testify as to his opinion or findings.[4] These findings concerned the alleged defects in design: that the gun could be operated with the safety plate open, that the front guide plate could be installed in its reverse position[5] and therefore open more easily, and that the safety device is exposed so that an operator could contact the sides of it accidentally and cause a staple to shoot. He also found that due to wear and tear through normal use

---

2. Much of the argument compares plaintiff's expert's qualifications and sufficiency of his tests to defendants' expert's qualifications and tests. This argument goes to the weight and credibility to be given to each expert's testimony. It is not an appellate function to weigh or judge the credibility of witnesses, but rather, a function of the trier of fact. *City of Indianapolis v. Robinson*, (1981) Ind.App., 427 N.E.2d 902; *Palmer v. Decker*, (1970) 253 Ind. 593, 255 N.E.2d 797; *Rieth-Riley Construction Co., Inc. v. McCarrell*, (1975) 163 Ind.App. 613, 325 N.E.2d 844. Defendants also interject in the middle of their argument that plaintiff did not attempt to link the expert testimony to proximate cause. They cite no authority as to why this is necessary nor do they argue how this is error; therefore, this argument is waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Moreover, defendants do not argue each objection separately, and thus, we do not treat them as such.

3. An objection to a question on the ground that no proper basis has been laid and as calling for a mere opinion cannot be interpreted as an objection that the witness had not shown any qualification to speak as an expert. *See Evansville R. R. Co. v. Swift*, (1891) 128 Ind. 34, 27 N.E. 420 (overruled on other grounds [*Indiana Natural Gas & Oil Co., v. Wooters*] at [141 Ind. 315] 40 N.E. [669] 670).

4. Defendants set out parts of the record which include objections to different testimony. Of these objections, one objection was sustained and one was not preserved since it came after the answer and no motion to strike was made. *See Deming Hotel Co. v. Prox*, (1968) 142 Ind. App. 603, 236 N.E.2d 613. The other objections might be considered objections on the grounds of insufficient factual basis.

5. This fact came into evidence, without objection, immediately before the question concerning his findings.

the guide plate opens more easily.[6] Based upon these findings, his experience and alternative designs (which would prevent the gun from operating when the guide plate is open), the expert concluded that the Senco staple gun was defective and unreasonably dangerous to the user.

■ Defendants correctly suggest that an expert may give an opinion that is based upon first-hand knowledge of the material facts at bar. *Davis v. Schneider, supra* at 289. An expert may also testify on the basis of knowledge as to facts in the record, *McCraney v. Kuechenberg,* (1969) 144 Ind. App. 629, 248 N.E.2d 171, or he may express his opinion upon assumed facts supported by the evidence and stated to him by way of a hypothetical question. *Town of Newburg v. Jones,* (1945) 115 Ind.App. 320, 58 N.E.2d 938.

[8] From the expert's examination of the gun, he gained first-hand knowledge of facts on the issue of whether or not the product was defective and unreasonably dangerous when it left the hands of the manufacturer. When an expert testified upon first-hand knowledge of facts, he does not need to be examined in the form of hypothetical questions. *Davis, supra.* He may testify to what he has observed, give his expert inference arising from what he has observed and state his opinions. *Id.* Thus, Riley's expert, testifying upon first-hand knowledge gained from examination of the gun, testified upon a sufficient factual foundation. The trial court committed no error.

■ Additionally, defendants seem to argue, somewhat confusingly, that the testimony concerning these "findings" should not have been admitted because there was no evidence of wear and tear, of the guide plate being open or installed backwards, or of the design of a safety device being involved. Therefore, this testimony had no relevancy to the facts of this case. How-

ever, at the time of the objection, Riley had introduced evidence of wear and tear; the gun was old and had been beaten around. The guns used by Corr-Wood had been there several years although they had been maintained on a regular basis. The guide plate was also found open immediately following the accident. Thus, the defect of failure to design the gun to prevent operation when the guide plate is open could be connected with evidence showing wear and tear. Therefore, part of the evidence was admissible. Where only a part of the evidence to which a general objection is made is subject thereto, the objection is properly overruled.[7] *McGuffey v. McClain,* (1892) 130 Ind. 327, 30 N.E. 296; *Huber Manufacturing Co. v. Blessing,* (1912) 51 Ind.App. 89, 99 N.E. 132. *See also Mueller v. Mueller,* (1948) 118 Ind.App. 274, 78 N.E.2d 667.

Defendants' second allegation of error is that the court erred in excluding testimony from a defense witness when he was asked if parts charts shipped with their staple gun contained safety warnings. Plaintiff's counsel objected to this question because no evidence of any specific documents, *i.e.,* parts charts, connected with any Senco guns within the time frame of plaintiff's accident had been presented. Defendants responded:

> "Your honor, I would like to reply to that. There has been no identification of the tool that was involved in this occurrence. They are going after this tool apparently as to the design of the E–Z Clear Device. I think the defendant Senco has a right to discuss the items that were included with the units as they were sold in general for that reason."

The court sustained the objection.

■ Even assuming the above response was an offer to prove, defendants have failed to preserve this question for review because the reply was unresponsive. If an offer of proof is unresponsive, exceeds the

---

6. When this guide plate is open, the staple becomes a free projectile when shot and ejects in random directions.

7. It also appears that the court would not abuse its discretion in admitting the evidence subject to being "connected up". Any error would then be preserved only by a motion to strike at the close of plaintiff's case.

scope of the question asked, it is not sufficient and there is no error in sustaining the objection. *Albert Johann & Sons Co. v. Echols*, (1968) 143 Ind.App. 122, 238 N.E.2d 685. Defendants' response was both unresponsive and general. It failed to specifically state what they expected to prove. No error was preserved.

Defendants' third allegation of error is that the trial court erred by excluding evidence which was relevant to Riley's credibility. On direct examination of Riley, his attorney elicited testimony that Riley had signed two documents containing statements of the cause of the accident which were inconsistent with statements now made by him at trial. These statements alleged that the staple came from his co-worker's gun rather than his own gun. These statements were included in the worker's compensation carrier's investigation reports. Defendants were allowed to read these statements into evidence and to cross-examine Riley on them. However, the trial court refused to let the jury review the documents, presumably because they disclosed the insurance coverage. Additionally, the court denied defendants' request for relief from an order *in limine*. The purpose of the request was to get permission to cross-examine Riley concerning who took these statements and the interest that person would have had in the case. The order *in limine* prohibited reference to the worker's compensation insurance.

■■■ While testing the credibility of a witness is a legitimate objective of cross-examination, the extent to which a witness may be cross-examined as to prior inconsistent statements is within the sound discretion of the trial court, due regard being given to the particular circumstances. *Parr v. McDade*, (1974) 161 Ind.App. 106, 314 N.E.2d 768. Thus, the standard of review of the question raised by the defendants, though they fail to recognize it, is whether the trial court abused its discretion in the latitude allowed in cross-examination. *Id.* To demonstrate abuse of discretion, defendant must demonstrate that the ruling was clearly against the logic and effect of the facts and circumstances before the court. *McFarlan v. Fowler Bank City Trust Co.*, (1938) 214 Ind. 10, 12 N.E.2d 752; *Temple v. Temple*, (1975) 164 Ind.App. 215, 328 N.E.2d 227.

■■■ Defendants claim the potential impact of this evidence upon Riley's credibility is obvious because it demonstrates that Riley adjusted his statement about the cause of his injury according to who would pay him. However, it is difficult to see how either of the alleged causes would change the theory of his case or the liability of the parties. The worker's compensation carrier would be liable on either cause. Additionally, it is not obvious, as claimed by defendants, that the manufacturer would not be liable if the staple came from a co-worker's gun. Any merit in this argument is slight. Therefore, the court did not abuse its discretion in its ruling because it was not against the logic and effect of facts and circumstances before the court.

Defendants' other contention seems equally tenuous in view of our standard of review. They argue that the worker's compensation carrier would benefit from Riley's trial version of the injury because it purports to implicate a third party, the manufacturer, who the carrier could pursue for indemnification. They claim the other version would be detrimental to the carrier's interest. Therefore, Riley's direct testimony that he told the worker's compensation carrier's employee that the cause listed on their form was wrong was incredible because if he had, they would have changed it because it would have been in their interest to change it. As noted above, it is not obvious, without some evidence to support it, that one version is any more beneficial to the insurance company than the other. This evidence, therefore, was not substantial and significant as claimed. The court did not abuse its discretion in refusing to permit the evidence to come before the jury when the probative value, alleged by defendants, is clearly outweighed by its prejudicial effect. *See, Smith v. Crouse-Hinds Co.*, (1978) Ind.App., 373 N.E.2d 923, *transfer denied*, 392 N.E.2d 1168.

Defendants' fourth allegation of error and primary contention is that the trial court erred in refusing to grant their motion for judgment on the evidence. In their argument, they claim that Riley failed to prove that the staple gun used by him was manufactured and distributed by defendants, that the gun had a defect proximately causing his injuries, and that he failed to negate other causes.

■ The rule in Indiana with respect to a motion for judgment on the evidence pursuant to Trial Rule 50 is that such a motion may be properly granted only if there is no substantial evidence or reasonable inferences derived therefrom supporting an essential element of the claim, a complete failure of proof. Ind.Rules of Procedure, Trial Rule 50; *Shanks v. A. F. E. Industries, Inc.*, (1981) Ind., 416 N.E.2d 833. In considering such a motion the trial court must consider only the evidence and reasonable inferences therefrom most favorable to the non-moving party. *Id.* A verdict which could only have been based upon surmise, conjecture or speculation as to one or more of the necessary elements of a claim should not be permitted to stand. *McKeown v. Calusa*, (1977) 172 Ind.App. 1, 359 N.E.2d 550; *see also Letson v. Lowmaster*, (1976) 168 Ind.App. 159, 341 N.E.2d 785. There must be evidence in the record which, if believed, is sufficient to establish all the facts necessary for a recovery. Where the evidence is circumstantial, as here, the ruling on a T.R. 50 motion may be exacting. The question then becomes the reasonableness of the sought-for inference.

■ Appellate review of a ruling on a motion for judgment on the evidence is subject to the same standards which govern the trial court in ruling on it. *Hendrickson & Sons Motor Co. v. OSHA*, (1975) 165 Ind.App. 185, 331 N.E.2d 743. Our task is to consider the evidence most favorable to the non-moving party along with all reasonable inferences therefrom. From this evidence we must determine whether there was evidence of probative value supporting each element which would justify submission of the claim to the jury. Ind.Rules of Procedure, Trial Rule 50; *Hendrickson, supra.*

■ At the time this cause of action accrued, the theory of strict liability defined in the Restatment (Second) of Torts Section 402A [8] had been expressly adopted as part of the law in Indiana.[9] *Ayr-Way Stores, Inc. v. Chitwood*, (1973) 261 Ind. 86, 300 N.E.2d 335. *Ortho Pharmaceutical Corp. v. Chapman*, (1979) Ind.App., 388 N.E.2d 541; *Cornette v. Searjeant Metal Products, Inc.*, (1970) 147 Ind.App. 46, 258 N.E.2d 652. A prima facie case is established by evidence of 1) a purchase 2) from a seller engaged in the business of selling such a product 3) of a defective product 4) and the product reached the user or consumer without substantial change in its condition and 5) the product caused physical harm to the user or consumer because of the defect. *Shanks, supra.* A product may be found "defective because of manufacturing flaws, design defects or failing to discharge a duty to warn or instruct of potential dangers of a product." *Dias v. Daisy-Heddon*, (1979) Ind.App., 390 N.E.2d 222.

**8.** The Restatement (Second) of Torts Section 402A states:

Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**9.** In June 1978, the common law of strict liability in tort was codified and is now stated at Ind.Code 33-1-1.5-1 to 33-1-1.5-8.

Riley's complaint alleged both faulty design and inadequate warnings.

We first address defendants' assertion that there was no evidence that the staple gun being used by Riley was made or distributed by defendants. Essentially their request is for us to reweigh the evidence and determine the credibility of the witnesses. The evidence most favorable to the verdict indicates that Hahn distributed Senco guns to Corr-Wood, Riley's employee. At the time of the accident these Senco guns as well as Duo-Fast guns were in use at Corr-Wood. Both Senco and Duo-Fast made silver-colored (smooth, shiny) guns. Riley testified that the gun he used had a silver handle, grip, and trigger and a black nose and safety chamber. The bottom of the gun pushed up when pressed against the wood. When Riley was shown a Senco staple gun he said it resembled the one he was using closely enough to say that it was a duplicate. Additionally, the foreman said that their Duo-Fast guns were brown. This statement was supported by a Hahn service representative's testimony that the only Duo-Fast guns he saw at Corr-Wood were brown. This evidence is sufficient to support a reasonable inference that the gun being used by Riley when the accident occurred was one manufactured by Senco and distributed by Hahn. Therefore, the allegation of no evidence of the gun's identity must fail.

Defendants additionally argue, (citing *Smith v. Michigan Beverage Co., Inc.*, (7th Cir. 1974) 495 F.2d 754), that the mere fact that an injury occurs cannot create an inference of a defect even if Riley was using a Senco product.[10] In the present case, however, there is evidence which goes beyond the mere fact of an accident. Riley's expert testified to several problems from which he concluded that there was a design defect. The expert further noted that the

adhesive used to attach a safety warning to the gun was unlikely to hold the warning in place once the gun was put into use. Therefore there was evidence supporting design defects as well as warning defects.

Defendants next suggest that the plaintiff must negate other reasonable causes of his injury because there is no direct evidence of defect. Of the cases cited (which have the correct citations), this idea seems to have been indirectly adopted. *See, Lindsay v. McDonald Douglas Aircraft Corp.*, (8th Cir. 1973) 460 F.2d 631, affirmed after remand 485 F.2d 1288; *Franks v. National Dairy Products Corp.*, (5th Cir. 1969) 414 F.2d 682. Even assuming for the sake of defendants' argument here such a statement to be the law in Indiana and that there was no direct evidence of a defect, no error is shown by this argument. It appeared from the testimony that there could have been three possible causes: horseplay or misuse, a staple shot from the co-worker's gun, or a staple shot out of Riley's gun. Contrary to defendants' assertion, testimony from both Riley and his co-worker negated the first two causes. Therefore, there was evidence, if believed, which would have negated other possible causes. Riley sustained this burden of presenting evidence, assuming the burden existed.

Defendants also argue that their motion for judgment on the evidence should have been granted because there was no direct evidence of a defect proximately causing Riley's injury.[11] In this argument, they first attack the qualifications and the factual basis for Riley's expert's testimony. We have addressed these contentions earlier and found no error.

They further argue that the expert could not state that any of the alleged defects caused plaintiff's injury.[12] They direct this part of their argument to the allegations of design defect. However,

---

10. In *Smith*, plaintiff picked up a bottle which broke and injured her. The court held that the negligence doctrine of *res ipsa loquitur* is inapplicable to a defect case, and therefore, there is no inference of a defect from the fact of an accident.

11. Obviously, direct evidence is not required if there is evidence from which a reasonable inference can be drawn as to a defect proximately causing the injury.

12. Nowhere in this argument do they cite to evidence in the record by page number.

they fail to discuss any error in terms of the alleged warning defect until their reply brief. A party cannot raise an argument for the first time on appeal in his reply brief. *Saloom v. Holder*, (1974) 158 Ind. App. 177, 307 N.E.2d 890. Thus, they have waived any error in submitting this theory to the jury or in terms of the sufficiency of the evidence to support the verdict on this issue as to warning defect. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

In view of the above, any possible error preserved would then be the court's action in submitting the design defect issue to the jury.[13] In determining if the trial court erred in its ruling on the T.R. 50 motion as it related to design defect, we examine the evidence most favorable to the plaintiff, the non-moving party. Riley and a co-worker were building boxes. The co-worker was working diagonally across from Riley stapling down the side of the box as Riley was stapling up another corner. Riley had stapled a few staples into the box and may have added some staples to the gun shortly before the accident and after a jam. He held the gun straight up and down at about eye level with the gun pointed straight into the wood. He placed the gun against the box thereby releasing the safety. When he pulled the trigger, he felt a puff of air and then felt the staple in his eye, points facing out and down. He thought the guide plate had been in position, but he did not really know.[14] Riley's expert testified that an operator would not necessarily notice if it was open. When he laid the gun on the table, he noticed the guide plate flap was open.

Riley and his co-worker testified that the staple had to come from Riley's gun. No one else was in a position to shoot staples in that direction and the co-worker was not shooting from such a position that a ricochet from his gun would travel toward Riley, thus ruling out the co-worker's gun as a

possible cause. Evidence also eliminated horseplay as a cause.

Riley's expert testified that the gun was defective and unreasonably dangerous. The defects included: the guide plate opening when dirt or a shard created a "jam" situation, and the gun operating with the guide plate open thereby ejecting staples in random directions.

Riley must show that a defect was the cause which, in natural and continuous sequence, unbroken by any intervening cause, produced the result complained of and without which the result would not have occurred. *Johnson v. Bender*, (1977) Ind.App., 369 N.E.2d 936, 939. This language describes the "but-for" test. *Ortho, supra*. Riley must also establish that the defect was the proximate cause: that the injury or consequence of the wrongful act was of a class reasonably foreseeable at the time of the act. *Ortho, supra* (citing *Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847). Ordinarily, the question of proximate cause is for the jury. *Ortho, supra*.

Riley carried his burden of establishing proximate cause. The evidence was sufficient to establish that Riley was injured by a staple coming from the Senco gun he was using. The same gun had its guide plate open immediately following the accident. This fact, considered with the defect of the gun operating with the guide plate open creating the possibility of a free projectile and the evidence eliminating other causes, would support a reasonable inference that he would not have been injured if this defect or a combination of defects had not existed. Additionally, the jury could have found that this injury was reasonably foreseeable in view of the evidence that alternative designs, some found on other Senco products, would prevent the gun from operating with a guide plate open and that some

---

13. Their argument is defective because it is made in terms of the evidence to support the verdict rather than the harm of any procedural error in submitting the issue of liability based upon design defect to the jury.

14. His belief was based on the fact that he did not think the gun would operate if the plate was not in position; however, the fact that the gun would operate in such circumstances and eject staples in random directions was the precise design defect asserted by Riley's expert.

warnings, though arguably inadequate, were given to wear safety glasses.

In defendants' final allegation of error, they assert that the trial court erred in giving its Instructions numbered 3 and 17.[15] The court's Instruction Number Three reads as follows:

"Under Indiana Law, a product, although virtually faultless in design, material and workmenship [sic], may nevertheless be deemed defective where the supplier fails to discharge a duty to adequately warn or instruct with respect to potential dangers in the use of the product. If this duty is breached and, as a proximate result, a user of the product is injured, the user can recover from the supplier. The user need not be one of the persons the supplier had a duty to personally warn, if the breach of the duty to warn the user's employer is the proximate cause of the injury.

The test which you should apply in determining whether a warning, if any, is adequate, is whether such warning was reasonable under the circumstances. A duty to adequately warn exists only when those to whom the warning would go can reasonably be assumed to be ignorant of the facts which a warning would communicate. If it is unreasonable to assume the recipient of such a warning is ignorant of those facts, such as where the danger or potentiality of danger is obvious, or known or should be known to the user, there is no duty to warn. In the discharge of this duty, if any, a defendant is not required to go beyond those employees of the user of the product to whom the defendant had access in warning them of those properties of its product, if any, that were dangerous but not obvious."

Defendants' objections to the instruction were:

"Defendant, J. R. Hahn Co., Inc. objects to the Court's Instruction Number 3 in that the Court's use of the word, 'vir-

tually' in the first line where the phrase reads, 'although virtually faultless' draws undue attention to the absence of any necessity of proving fault with strict liability case.

Defendant, Senco Products, Inc., objects to the Court's Instruction Number 3 as it relates and highlights the words, 'virtually faultless' at the top sentence, for the reason it draws unnecessary attention and indicates to the jury that a product can be perfect and nevertheless be imperfect. I don't believe the jury can understand that instruction, and object to the phraseology as being misleading. Defendant J. R. Hahn Co., Inc., joins in the additional objections made by Senco Products, Inc., to Court's Instruction Number 3."

Defendants argue that a product cannot be virtually faultless and flawed and that the use of these words led to confusion. They then state that the failure to warn may produce a defect in which the product is not virtually faultless. This statement conveys nothing different than the instruction.

■ The instruction correctly states the law of Indiana as stated in *Shanks v. A. F. T. Industries, Inc.*, (1980) Ind.App., 403 N.E.2d 849, vacated on other grounds, 416 N.E.2d 833; *Nissen Trampoline Co. v. Terre Haute First National Bank*, (1975) Ind.App., 332 N.E.2d 820, *reversed on other grounds*, 265 Ind. 457, 358 N.E.2d 974. While we recognize that holdings of a case may not always be appropriate for instructions to a jury, *Mansfield v. Shippers Dispatch*, (1980) Ind.App., 399 N.E.2d 423, we find nothing misleading by the phrase "virtually faultless" when read in the context of the entire instruction. The phrase modifies "design, material, and workmanship." It correctly suggests that defects may be found in deficient warnings even though the product is designed and manufactured properly. We, therefore, find no merit in this argument.

15. Defendants cite no authority to support their contentions on either of the instruction arguments.

Although damages are not alleged to be excessive, defendants argue that the trial court committed reversible error in giving the following instruction:

"If you find for the plaintiff on the question of liability, you must then determine the amount of money which will fairly compensate plaintiff for those elements of damage which were proven by the preponderance of the evidence.

You may consider:

(1) The nature and éxtent of the injury.

(2) Whether the injury is temporary or permanent.

(3) The physical pain experienced (and reasonably certain to be experienced in the future) as a result of the injury.

(4) The value of lost earnings and loss or impairment of earning capacity.

(5) The reasonable expense of necessary medical care, treatment and services.

(7) (sic) Disfigurement resulting from the injury.

(13) (sic) The age of the plaintiff and his health.

You are to determine whether these elements of damage have been proved by a consideration of the evidence relating to damages. Your verdict must be based on that evidence and not on guess or speculation."

The gist of this argument is that there was no evidence upon which an award for loss of future earning capacity or future pain and suffering could be based.

 We find no merit in this argument even assuming absence of this evidence. In accepting a nearly identical instruction under a similar attack, this court stated:

"[I]nstructions permitting the jury to consider certain elements of damages, qualified by the phrase 'if any,' does not constitute prejudicial error even though an evidentiary basis for the element(s) in issue is lacking. *McClure v. Miller*, (1951) 229 Ind. 422, 98 N.E.2d 498; *Lincoln Operating Company v. Gillis*, (1953) 232 Ind. 551, 114 N.E.2d 873; *Indianapolis Transit System, Inc. v. Williams*, (1971) 148 Ind. App. 649, 269 N.E.2d 543; *Glen Park Democratic Club, Inc. v. Kylsa*, (1966) 139 Ind.App. 393, 213 N.E.2d 812. These holdings reflect the notion that generally, we must presume the jury obeys instructions as given; thus, where the award is supported by otherwise competent evidence, the burden of establishing prejudicial error has not been discharged. In this case, the jury was carefully instructed on their role as fact-finder. The instruction in issue confined the elements of a damage award to those '. . . proved by the evidence to have resulted from the negligence of the defendant.' Since the award is sustainable upon competent evidence, we are not persuaded that prejudicial error occurred under the facts presented herein." [Footnote omitted.] *Wimp v. Anthis*, (1979) Ind.App., 396 N.E.2d 918. In the present case, the instruction also confined the elements of a damage award to those proved by the evidence. This award was sustainable upon competent evidence. Therefore, the trial court committed no reversible error in giving this instruction.

Affirmed.

MILLER, P. J., concurs in result.

CONOVER, J., concurs.