536 N.E.2d 1033 (1989)
In re PATERNITY OF K.G.
R.A.F., Appellant (Respondent),
v.
J.S.G., Appellee (Petitioner).
No. 02A04-8805-CV-00167.
Court of Appeals of Indiana, Fourth District.
April 10, 1989.
Rehearing Denied May 17, 1989.
Richard J. Thonert, Romero & Thonert, Fort Wayne, for appellant.
Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.
*1034 CONOVER, Presiding Judge.
Respondent-Appellant R.A.F. appeals a jury verdict and judgment finding him to be the father of a minor child.
We reverse.
R.A.F. asserts four issues. We consolidate and rephrase them as two:
1. whether the trial court erred by admitting certain testimonial evidence,[1] and
2. whether the evidence was sufficient to support a finding of paternity.[2]
On June 12, 1984, an Allen County Deputy Prosecutor filed a verified petition seeking determination of the paternity of K.G., born October 24, 1982. The petition named K.G.'s mother, J.G. as petitioner and R.A.F. as the respondent.[3] After the State rested, R.A.F. moved for a directed verdict. R.A.F. argued he had never been identified as the respondent. The court granted R.A.F.'s motion and directed the jury to return a verdict in his favor. It did. Judgment was entered accordingly. Later, the trial court granted the State's motion to correct error and R.A.F. appealed. In a memorandum decision filed April 24, 1986, the Third District of this court, by Judge Hoffman, affirmed the trial court order granting the State's motion to correct error. It remanded for a new trial.
Upon remand trial was again before a jury. The jury returned a verdict in favor of the State. R.A.F.'s motion to correct error was denied and he appeals.
Additional facts are included below.

I.
R.A.F. contends the trial court erred by admitting and later failing to strike testimony given by Dr.[4] Sanking Chen, who supervises blood testing for the American Red Cross. R.A.F. also contends the trial court erred by failing to strike deposition testimony given by Dr. David Sand, a medical doctor who delivered a child on October 24, 1982.

(a) Chen's testimony

Chen qualified, without objection, as an expert witness, then generally explained how blood testing is useful in determining paternity. Chen testified he supervised blood testing for the American Red Cross, explained the procedure used when blood is tested at his facility, and, over R.A.F.'s numerous objections, was permitted to testify someone under his supervision drew blood from R.A.F., J.G., and K.G.; guidelines were followed for chain of custody and identity of the parties' blood; and the blood samples taken were tested. Chen described the testing done in this case and rendered an opinion as to paternity. No report from the testing office was offered into evidence.

(i) R.A.F.'s arguments
R.A.F. contends the trial court erred when it allowed Chen to testify about blood testing of himself, J.G., and K.G. He argues Chen's testimony about the facts of testing was not admissible because Chen admittedly had no personal knowledge about (a) whether such blood testing actually occurred; and, if so, (b) the identities of the persons who submitted to testing; (c) the identities of persons who administered the test; (d) the procedures followed for administration of blood tests; (e) the chain of custody of blood samples taken and tested; and (f) the procedure followed to analyze any blood samples so taken. R.A.F. argues Chen's testimony assumed facts not in evidence, he could not cross-examine Chen in these circumstances and he was therefore denied due process of law and a fair trial. R.A.F. contends the State failed to establish a proper foundation for admission of blood test results and for any opinion about them. R.A.F. opines the trial *1035 court should have stricken Chen's testimony and should have advised the jury to disregard it.

(ii) the State's arguments
The State claims Chen's testimony about matters of fact not within his personal knowledge was admissible under the business records exception to the hearsay rule. It argues Chen's testimony was properly admitted as expert testimony by one who supervised the testing procedures used. The State argues Chen's testimony established a proper chain of custody for the samples taken and for admission of test results therefrom in "the same way Dr. Conneally's testimony did in Gregory." (Appellee's Brief 13). The State opines Chen was privileged to render an expert opinion on the basis of tests performed by others. The State argues R.A.F. waived, by failing to raise below, any arguments about lack of evidence of the test's reputation for reliability in the relevant scientific community.

(iii) applicable rules of evidence
An expert may give an opinion about facts of which he has no firsthand knowledge if those facts are in the record or can be assumed from the evidence and stated to the expert by a hypothetical question. Senco Products Inc. v. Riley, (1982), Ind. App., 434 N.E.2d 561, 565, 33 A.L.R.4th 1173; see also, Davis v. Schneider, (1979), 182 Ind. App. 275, 283, 395 N.E.2d 283, 289. Further, an expert may give an opinion based in part upon reports not in evidence and upon reports inadmissible under the hearsay rule provided (1) the expert has sufficient expertise to evaluate the reliability and accuracy of the report, (2) the report is a type normally found reliable, and (3) the report is of a type customarily relied upon by the expert in the practice of his profession. Duncan v. George Moser Leather Co. (1980), Ind. App., 408 N.E.2d 1332, 1343. See also, Wickliffe v. State, (1981), Ind., 424 N.E.2d 1007, 1009 and Miller, Indiana Evidence sections 703.104, 705.105 (West, 1984).
Factual evidence, on the other hand, must be given by witnesses who have personal knowledge, e.g. Buck v. State (1983), Ind., 453 N.E.2d 993, 1000; see generally, I.L.E. Witnesses Sec. 22; unless the testimony comes within some exception to the hearsay rule recognized because of its reliability and veracity, e.g. business records, Baker, supra; See generally, Miller, Indiana Evidence, sections 803.101-804.206 (West, 1984).

(iv) this case
It is important in this case to make a clear distinction between the two types of testimony given by Chen. On the one hand Chen testified about the facts of testing. In this regard Chen's status as an expert is of no import. Chen also testified about the results of testing. In this regard Chen's status as an expert is important.
Despite the State's arguments to the contrary, neither the expert opinion rules of In re Gregory (1984), Ind. App., 469 N.E.2d 480, 481, nor the business records exception to the hearsay rule, e.g. Baker v. Wagers (1984), Ind. App., 472 N.E.2d 218, 221, are applicable to a determination of the admissibility of Chen's factual testimony. Chen admitted he knew none of the parties; drew no blood from any of them; and was not present when blood was supposed to have been drawn. Chen was not competent to testify about these matters because he had no personal knowledge of them. Buck, supra. The business records exception to the hearsay rule does not permit admission of Chen's factual testimony. The business records exception concerns admissibility of documentary, not testimonial evidence. Baker, 472 N.E.2d at 221. Although Chen, as supervisor of blood testing, may have been qualified to authenticate a business record had one been offered, see, e.g., Pitts v. State, (1982), Ind., 439 N.E.2d 1140, 1142; Baker v. Wagers, (1984), Ind. App., 472 N.E.2d 218, 221; Ford v. State, (1979), 179 Ind. App. 535, 539, 386 N.E.2d 709, 713, no documentary evidence was introduced here. Whether an admissible business record was made and whether Chen was testifying on this basis is a matter of speculation because no such record was offered or admitted into evidence. Yet, Chen was allowed to testify blood was *1036 drawn from these parties, chain of custody rules were followed, and tests were performed upon the blood drawn. This was error because Chen had no personal knowledge about the facts of testing and his testimony came within none of the exceptions to the hearsay rule. See generally, Miller, Indiana Evidence Sections 803.100 - 806.102.
Likewise it was error to allow Chen to render an expert opinion about paternity in this case. His opinion was not based upon firsthand knowledge. Nor was it based upon facts otherwise in the record, nor which could be assumed from the evidence and stated by a hypothetical question. Senco, supra. The State did not introduce a report prepared under Chen's supervision or by anyone else. The only prong of the Duncan test met was the first, i.e. the parties stipulated to Chen's expertise. There was no showing Chen was relying upon a report prepared by anyone and if he was so relying, there was no showing the report was of a type normally found to be reliable and of a type customarily relied upon by him in the practice of his profession. Duncan, supra. Thus, there was no proper foundation for Chen's opinion testimony. The trial court should have sustained R.A.F.'s objections to it.

(b) Sand's Deposition Testimony

Outside the presence of the jury the State moved to publish the deposition of Dr. David Sand. The court ordered it published, then heard and ruled on objections made during the deposition. During the deposition of Dr. Sand, on direct examination, the State asked Sand if he delivered a child bearing a different first name. That is, it asked if he delivered "C.G.," not K.G. on October 24, 1982. Sand was also asked if he observed factors upon which to determine "[C.G.'s]" gestation age at birth. Sand opined her gestation age at birth was 39 weeks. Sand said he would believe J.G. if she testified she conceived between January 24 and January 29, 1982. On redirect the Deputy Prosecutor again asked questions about the birth of "[C.G.]." Once, R.A.F.'s counsel referred to the child delivered by Sand as "[C.G.]."
The State never asked if the child delivered by Sand was J.G.'s child. It did not ask if J.G. was Sand's patient on October 24, 1982.
After the State rested, R.A.F. moved to strike Sand's testimony.

(i) R.A.F.'s arguments
R.A.F. contends the court erred by denying his motion. R.A.F. avers Sand's testimony related to the delivery of a child named "[C.G.]" and no issue about such a child is related to or was ever linked to this paternity case. R.A.F. argues his motion to strike was timely because only at the end of the State's case was it obvious the petitioner had had the opportunity to "connect up" the evidence and show it relevant. R.A.F. opines Sand's testimony misled the jury.

(ii) the State's arguments
The State argues, as the trial court decided, R.A.F.'s motion to strike was untimely. The State argues R.A.F. has failed to show harm from the admission of Sand's testimony. The State notes R.A.F.'s counsel also once referred to the child as "[C]" during cross-examination of Sand. The State asserts Sand's testimony is cumulative of J.G.'s testimony. The State asserts the child "[C]" delivered by Sand on October 24, 1982, is the subject child, K.G., born to J.G. on October 24, 1982. The State argues R.A.F.'s counsel was obliged to bring the name discrepancy to the attention of the court when the State "wrongly" used the name "[C]." The State appears to argue R.A.F.'s counsel had some duty to correct the State's factual evidence or, because he cross-examined Sand about the birth of "[C]", he admitted K.G. and "[C]" are the same child.
The State does not tell us the place in this record where the necessary connection between K.G. and "[C]" is made. We have searched the record and cannot find any connecting evidence. R.A.F.'s counsel was under no duty to prove the State's case. See, e.g. Rules of Professional Conduct, Rule 3.1 and 3.3. The State, not the respondent, *1037 is responsible for the State's representations. Further, questions on cross-examination must be within the scope of direct examination. E.g. Henson v. State (1988), Ind. App., 530 N.E.2d 768, 770. R.A.F.'s sole mention of "[C]" was within the scope of direct examination, but was not an admission "[C]" and K.G. were one and the same.
The timeliness of a motion to strike depends upon the situation presented in a given case. The motion is premature if addressed to evidence the competency or relevance of which may be thereafter made to appear. See, 28 I.L.E. Trial Sec. 69 (1960); cf. State v. Sovich (1969), 253 Ind. 224, 235, 252 N.E.2d 582, 589 (a motion to strike made during cross-examination was timely where made when the objectionable nature of the testimony first became known). Here, as R.A.F. correctly argues, his motion to strike, made at the close of the State's case, was timely. It was only then obvious the State had had the opportunity, but had failed, to "connect up" the evidence given about "[C]" and had had the opportunity to show the evidence about "[C]" relevant to K.G. and J.G. Fault for the State's failure to make the necessary connection cannot be laid upon R.A.F. and his counsel. The motion was timely. Because none of Sand's testimony was related to the birth of K.G. and because K.G.'s is the only birth relevant to this case, R.A.F.'s motion to strike should have been granted.

II.
We are aware a mother's testimony alone may be sufficient to support a judgment of paternity. E.g. H.W.K. v. M.A.G. (1981), Ind. App., 426 N.E.2d 129, 133. We are also aware reversal may not be predicated upon the erroneous admission of evidence unless the admission is inconsistent with substantial justice. Ind. Rules of Procedure, Trial Rule 61. J.G.'s testimony about intercourse with R.A.F. at the relevant times was contradicted by testimony from R.A.F.R.A.F. also presented evidence J.G. had told another person she was pregnant before January, 1982. He presented evidence J.G. dated others during relevant times; J.G. said another person was the father of her child; J.G. was sleeping with another person; and J.G. did not have sex with R.A.F. during the relevant times. In these circumstances, the highly influential, but erroneously admitted, testimony by Chen and Sand was not harmless under T.R. 61. The erroneously admitted evidence was of such a character as to be highly prejudicial. With a purportedly scientific basis it bolstered the hotly contested testimony given by J.G. Cf. Indianapolis Railways v. Waters (1938), 213 Ind. 527, 12 N.E.2d 119 (where influential evidence is permitted to go to the jury it will be presumed to have prejudiced the objecting party, unless facts, which the declaration was intended to prove, were established by uncontradicted evidence.) R.A.F. was wrongly prejudiced by the erroneous admission of this evidence.
Reversed.
CHEZEM and BUCHANAN, JJ., concur.
NOTES
[1] R.A.F.'s issues 1, 2 and 3.
[2] R.A.F.'s issue 4. Because we reverse on the basis of the first issue we do not address the second.
[3] Because, by statute, the Deputy Prosecutor brings a paternity action at the request of the child, mother, or father, IND. CODE 31-6-6.1-3, and did so here, the petitioner is referred to as the State. Thus, the parties are otherwise referred to by name or initials to avoid confusion.
[4] Ph.D. in genetics.